**Kenneth Roy HUDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68591.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 11, 1984.

Charles L. Caperton, Dallas, for appellant.

Patricia A. Elliott, Dist. Atty., Jorge A. Solis and Randy Dale, Asst. Dist. Attys., Abilene, Robert Huttash, State's Atty., Austin, for the State.

OPINION

CLINTON, Judge.

This is an appeal from conviction of possession of methamphetamine in which pun-

ishment was assessed at five years confinement. The issue before us is whether an arrest warrant adequately protected the Fourth Amendment interests of Kenneth Roy Hudson, a person not named in the warrant, when his home was entered without his consent and in absence of exigent circumstances.

The record before us reflects two Department of Public Safety investigators secured an arrest warrant for Harvey Nichols. After obtaining the warrant, the two agents set up surveillance at appellant's house. His house was one of four locations where Nichols had been seen. After some time, the agents saw Nichols enter the house. Although there was no evidence indicating Nichols was armed, dangerous, or about to escape, the agents called in two more DPS officers. After the reinforcements arrived, they rang the doorbell of appellant's house, and, when no one answered, an agent kicked in the door. When they entered the house, the agents immediately saw Nichols, who took a "dive" for the couch, but did not try to resist or escape. The agents then went through the residence to "secure" it. During this process, they saw appellant coming out of a bedroom, and he was taken, without resistance, to the living room and told to sit down. Because the officers had seen a bong pipe containing marihuana on the coffee table when they first entered the house, they placed all occupants of the house under arrest.

While securing the residence, an officer had seen pornographic pictures lying on the floor. He asked appellant permission to search the residence, telling him that he could either give permission or the agent would obtain a search warrant.[1] Appellant

signed the consent form. The search turned up some white powder, some Captagon[2] tablets, and some pictures, which an agent later determined were not so pornographic as to be illegal. Appellant was subsequently charged with possession of .07 gram, plus a trace, of methamphetamine.

Appellant avers the seized methamphetamine should be suppressed under *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), wherein seven justices agreed an arrest warrant does not provide adequate protection for citizens situated like appellant. Thus they held absent exigent circumstances or consent, law enforcement officers cannot legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. Because *Steagald* was decided after the above recited events, the question becomes one of retroactivity.

In *United States v. Johnson,* 451 U.S. 204, 102 S.Ct. 1642, 68 L.Ed.2d 38 (1982), the Supreme Court held that a constitutional ruling concerning the Fourth Amendment is to be applied retroactively to convictions not final at the time the decision was rendered. The majority approved the use of past precedents concerning retroactivity in three areas only. First, when a decision of the Supreme Court merely applies settled precedent to new and different facts, there is no question as to whether the later decision should apply retroactively because the decision has not in fact changed the rule. See, e.g., *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Second, if a new ruling has been *expressly declared* to be a clear break with the past, such principle is prospective only. *Johnson,* 102 S.Ct. at 2579 and see *United States v.*

---

1. Because of our disposition of this case, we need not determine if the consent was voluntary. However, we note that this Court has determined a consent to be involuntary where an officer promised to obtain a search warrant if the suspect did not consent to the search. See, e.g., *Paprskar v. State,* 484 S.W.2d 731, 737 (Tex.Cr.App.1972).

2. According to the DPS agent testifying at the suppression hearing, possession of Captagon is a Class A misdemeanor. However, we find no mention of Captagon in the Dangerous Drugs Act, Article 4476–14, V.A.C.S. or in the Controlled Substances Act, Article 4476–15, V.A.C.S. nor can we find a reference to Captagon in medical dictionaries or in the Physician's Desk Reference.

*Peltier,* 422 U.S. 531, 547, n. 5, 95 S.Ct. 2313, 2322, n. 5, 45 L.Ed.2d 374 (1975). Finally, the Supreme Court approved full retroactivity when a ruling affects authority of a trial court to convict or punish a criminal defendant in the first place. *Johnson,* 102 S.Ct. at 2587.

As was the case in *Johnson,* the ruling in *Steagald,* supra, does not fall into one of the three approved categories. First, *Steagald* did not simply apply settled precedent to a new set of facts. Rather, *Steagald* found the common law privilege against unreasonable searches and seizures demands that law enforcement officers may not search for the subject of an arrest warrant in the home of a third party, absent exigent circumstances or consent. This extension is unprecedented, thus taking it out of the first category. *Steagald* also does not fall into the second category in that it embraces a settled precept of common law. Finally, *Steagald* does not fall into the third category, because its rule did not go to the trial court's authority to convict or sentence Steagald, nor did its rule immunize Steagald's conduct from punishment. *Id.,* at 2578.

Because the *Steagald* rule does not come within the three approved categories, we use the retroactivity analysis approved by the Supreme Court in *Johnson,* supra. The Court adopted the analysis urged by Justice Harlan in *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (dissenting opinion) and *Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (separate opinion), wherein he argued that failing to apply a new constitutional rule to cases on direct review violated three norms of constitutional adjudication. First, a case by case approach generates "incompatible rules and inconsistent principles." *Desist,* 89 S.Ct. at 1038. Second, it is inherently unfair to apply a new constitutional rule "entirely prospectively, while making an exception for the particular litigant whose case was chosen as the vehicle for establishing that

rule." *Id.,* at 1038, cited in *Johnson,* 102 S.Ct. at 2586. Third, the Supreme Court's previous approach to retrospectivity violated the adjudicatory norm of treating similarly situated defendants in a similar fashion.

Following the retrospectivity analysis approved in *Johnson, Steagald* must be applied to the instant case. The conduct of the DPS agents clearly violates *Steagald's* dictates. In truth, their conduct exemplifies the fear expressed in *Steagald* that, when armed with an arrest warrant, officials are free to search any house where they are "reasonably certain" the subject may be. The objectionable feature of this use of the arrest warrant is that it provides no judicial check on the police officer's assessment that the evidence available justifies an intrusion into a home of a third party.

Such was the situation in the case at hand. Apparently appellant, Harvey Nichols, and a third party had been under surveillance for eight to ten days, and during that time agents had observed Nichols in at least four different locations. After obtaining an arrest warrant for Nichols, the agents set up a surveillance at appellant's home. Why they chose to set up surveillance at appellant's home instead of the other three locations is not in the record. There is no indication that it was more likely that Nichols would show up at appellant's house than at the other three locations. Further indication of pretext lies in the obvious: The police could have arrested Nichols before he entered appellant's house and, arguably, they could have waited until he left the house.

*Steagald* spoke to this very situation. The arrest warrant adequately protected the privacy interests of Harvey Nichols in that the warrant embodied a judicial finding that there was probable cause to believe Nichols had committed a felony. However, as in *Steagald,* the agents did not use the warrant to arrest Nichols in a public place or in his home. Rather, they used the war-

rant as authority to enter the home of a third person, without his consent and in absence of exigent circumstances.[3] As *Steagald* pointed out, an arrest warrant may protect its subject from an unreasonable seizure, but it does nothing to protect a third party's privacy interest in being free from an unreasonable invasion and search of his home. *Steagald,* 102 S.Ct. at 1648. As the Supreme Court held:

"In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant. [Citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Johnson v. United States,* supra.]

We see no reason to depart from this settled course when the search of a home is for a person rather than an object." 102 S.Ct. at 1648.

The Court went on to note that the contrary conclusion would create a "significant potential for abuse." *Id.,* at 1649. Pertinent to the instant case is the Court's observation that an "arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place." *Id.*

■■■ Following *Steagald* and *Johnson,* supra, we find the intrusion and subsequent search of appellant's house were invalid and the methamphetamine should have been suppressed. We further find that *Steagald* limits Article 15.25, V.A.C.C.P., which pro-

vides: "In case of felony, the officer may break down the door of any house for the purpose of making an arrest, if he be refused admittance after giving notice of his authority and purpose." Because our statutes touching on the Fourth Amendment must be read consonant with constitutional rulings, officers must be armed with a search warrant if they are seeking to arrest a suspect in the home of a third person, absent consent or exigent circumstances. See *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

Appellant also challenges the sufficiency of the evidence. He contends there is insufficient evidence to prove he possessed or exercised control over the methamphetamine. In view of our disposition of this case, we need not determine if the evidence showed possession or control.

Because the admission of the unlawfully seized evidence was trial error, the judgment is reversed and the cause is remanded. *Collins v. State,* 602 S.W.2d 537 (Tex.Cr. App.1980); *Adams v. State,* 639 S.W.2d 942 (Tex.Cr.App.1982); *Schmidt v. State,* 659 S.W.2d 420 (Tex.Cr.App.1983).

---

3. It must be remembered appellant did not open the door to the officers, thereby losing his expectation of privacy. Rather, the officers knocked, and receiving no response, they broke into appellant's home. See *Rodriguez v. State,* 653 S.W.2d 305 (Tex.Cr.App.1983).