**Jarvis Lamont MORGAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–95–00927–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 26, 1998.

Peter Justin, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before YATES, AMIDEI and FOWLER, JJ.

## OPINION

AMIDEI, Justice.

Jarvis Lamont Morgan appeals his conviction for possession of cocaine. After his motion to suppress was denied, appellant pleaded guilty to the charge and the trial court sentenced him to five years imprisonment. In one point of error, appellant contends the trial court erred in denying his motion to suppress because his arrest was unlawful under the Texas and United States Constitutions. We affirm.

## I. BACKGROUND.

On September 12, 1994, Officers Braud and Jones went to the Days Inn Motel to execute a felony arrest warrant for appellant for an unrelated aggravated assault. Appellant concedes the warrant was a valid felony arrest warrant. At issue is whether the arrest warrant for appellant provided the police officers with legal authority to enter the motel room that was registered to appellant's sister, thereby validating the seizure of the evidence.

Officer Braud testified at appellant's hearing on his motion to suppress. He testified he knew appellant from past investigations. Officer Braud had a tip that appellant was in room 235 of the Days Inn Motel and checked the registration with the manager of that motel. The manager advised the officers there was a person named "Morgan" in room 233, and the room was registered to appellant's sister. The officers went to room 233, knocked on the door three or four times, but no one answered the door. The officers heard the TV going and people moving about the room. Officer Braud knocked on the door again, then imitated the manager's Arabic accent and said, "this is your management, please to be opening the door." Appellant's sister opened the door, and Officer Braud asked her if Jarvis was in the room. Officer Braud could see a pair of tennis shoes and legs on the back bed from the doorway. Appellant's sister answered, "oh," then looked back into the room. Appellant's sister then stepped aside, and the officers walked past her into the room. Officer Braud testified appellant had a long history of assaultive violence and use of weapons and the officers were in fear of their safety when they entered the room. Officer Braud immediately recognized appellant, said "Hi, Jarvis," and handcuffed him. While looking around the room for weapons, Officer Braud observed, in plain view, a marijuana cigarette laying in tin foil on a night stand beside's appellant's bed. Officer Braud picked up the cigarette and observed it was wet with some unknown substance. The officer then observed a bag of marijuana leaves and seeds, in plain view, sitting on top of the trash in a trash can next to the dresser in the room. Officer Braud told Officer Jones to check under appellant's bed and between the mattresses for a weapon. Expecting to find a weapon, Officer Jones lifted the mattress of appellant's bed and found a "cake of crack cocaine." On cross-examination, Officer Braud testified the room was registered to appellant's younger sister, Tenesha Morgan. Appellant's older sister, Temakhem Morgan, was the sister that opened the door to the officers. Officer Braud testified he did not ask anyone for permission to enter the room after Ms. Morgan opened the door. Officer Jones corroborated Officer Braud's testimony.

Appellant testified he "stayed" in the room with his little sister for two days to watch over her. He testified that she was a minor and he was staying with her for that reason. The purpose of the stay for both of them was not mentioned. Appellant testified he had enough clothing "for about a week in the dresser" and some toiletries. He planned to stay with his sister "until somebody came to watch over her because she was underage." His visit was interrupted because he was arrested on the second day. Appellant stated he did not know who the room was

"leased by." He stated his "adult" sister was staying there, and she called him to come stay with the younger sister. Appellant stated the officers found the cocaine in his sister's bed, not his. He stated the officers did not have anyone's permission to enter the room.

The trial court read his findings of fact into the record with his conclusions of law. The trial court overruled appellant's motion to suppress and concluded the officers had a right to execute an arrest under the felony arrest warrant under circumstances where the officers believed defendant was at his residence, or place to live, "that was more family in nature," than a residence of a third party. The trial court also concluded that once appellant was arrested, the officers had a right, under the Fourth Amendment and the Texas Constitution, to search the area in the "immediate reach and surroundings of the defendant for contraband and to protect against any weapons."

## II. MOTION TO SUPPRESS.

**A. Standard of Review.** Appellate courts should afford total deference to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* Therefore, because the trial court's decision to grant or deny the motion to suppress turned on the court's assessment of witness credibility and demeanor, we will review the record applying a deferential, abuse of discretion standard of review.

A ruling on a motion to suppress lies within the sound discretion of the trial court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). At the hearing on the motion, the trial court serves as the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). Therefore, absent a clear showing of an abuse of discretion, we will not disturb the trial court's ruling.

**B. Legality of the Arrest.** Appellant contends the officers had no right to enter the motel room registered to appellant's sister without her consent, absent exigent circumstances. Appellant cites *Hudson v. State*, 662 S.W.2d 957 (Tex.Crim.App.1984) as authority for this proposition. We disagree.

In *Hudson*, the officers had a felony arrest warrant for Harvey Nichols, not the appellant. The officers observed Nichols go in appellant's house and proceeded to knock on the door. Receiving no answer, the officers kicked in the door. Upon entering appellant's house, Nichols took a "dive" for the couch, but did not try to resist or escape. The officers then searched the premises, found methamphetamine, and arrested appellant. Citing *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the *Hudson* court found appellant's arrest was invalid because the officers must have a search warrant if they are seeking to arrest a suspect in the home of a third person, absent consent or exigent circumstances. *Hudson*, 662 S.W.2d at 960.

In *Hudson*, the officers had an arrest warrant for *Nichols*, not appellant. They used this warrant to break into *Hudson's* house, without his consent and in the absence of exigent circumstances. In this case, the officers had a felony arrest warrant for *appellant* and entered a motel room in which he was living with his minor sister. Although the room was rented to his sister, appellant had been there two nights and planned to stay until someone else came to look after his minor sister. He had clothes for a week and his toiletries and, under these circumstances, the trial court did not abuse its discretion in finding that the motel room was appellant's residence.

Under *Payton v. New York*, 445 U.S. 573, 601–05, 100 S.Ct. 1371, 1388–89, 63 L.Ed.2d 639 (1980), a valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute that warrant. *Id.* However, absent exigent circumstances or consent, an arrest warrant

does not justify entry into a third person's home to search for the subject of the arrest warrant. *Steagald,* 451 U.S. at 215–18, 101 S.Ct. at 1649–50; *Hudson,* 662 S.W.2d at 960.

Thus, "if the suspect is just a guest of the third party, then the police must obtain a search warrant for the third party's dwelling in order to use evidence found against the third party." *United States v. Litteral,* 910 F.2d 547, 553 (9th Cir.1990). However, "if the suspect is a *co-resident* of the third party, then *Steagald* does not apply, and *Payton* allows both arrest of the *subject* of the arrest warrant and use of evidence found against the *third party*" (emphasis added). *Id.*

Under *Payton,* officers executing an arrest warrant must have a *"reasonable belief* that the suspect resides at the place to be entered . . . and [have] reason to believe that the suspect is present" at the time the warrant is executed. *United States v. Lauter,* 57 F.3d 212, 215 (2d Cir.1995); *see also United States v. Magluta,* 44 F.3d 1530, 1535 (11th Cir.), *cert. denied,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995)(emphasis added). As indicated, the officers' assessment need not in fact be correct; rather, they need only "reasonably believe" that the suspect resides at the dwelling to be searched and is currently present at the dwelling. *Magluta,* 44 F.3d at 1533–36. *See U.S. v. Risse,* 83 F.3d 212, 215–16 (8th Cir.1996).

In this case, the officers had a tip that appellant was staying at the Days Inn Motel in room 235. Upon checking with the manager, the officers determined a person named "Morgan" was in room 233, and the room was registered to appellant's sister. The officers had reason to believe that appellant was living in room 233, and was presently there, based on this information and their tip. After receiving no answer to the knock on the door, the officers heard the TV and *people moving about* in the room, confirming the officers' belief that appellant was one of those people presently in the room. They knocked again, and appellant's sister opened the door. While standing outside, the officers observed appellant's feet on the bed. The trial court found appellant was a *co-resident* of the room with his sister because

of their family relationship. Appellant testified he was going to be there until another adult came to live with his underage sister. We find the brother/sister relationship, together with appellant's reasons for being with his sister, constitutes some "other significant relationship to" the motel room. *See Risse,* 83 F.3d at 217. So long as appellant possessed this "significant relationship to" the motel room, it would be "considered [appellant's] 'home' for Fourth Amendment purposes, even if the premises [were] owned by a third party (rented to appellant's sister) and others [were] living there, and even if [appellant] concurrently maintained a residence elsewhere as well." *Id.* We find the officers were authorized to enter appellant's residence in order to execute appellant's arrest warrant under *Payton,* 445 U.S. at 601–05, 100 S.Ct. at 1388–89. The officers did not need anyone's permission to enter the room. With a felony arrest warrant, the officers had the right to "break down the door of any house for the purpose of making an arrest." TEX.CODE CRIM. PROC. ANN. art. 15.25 (Vernon 1977); *Jones v. State,* 568 S.W.2d 847, 857 (Tex.Crim.App.1978).

**C. Legality of the Search.** The officers testified they observed a marijuana cigarette in tin foil on the night stand next to appellant's bed and a bag of marijuana leaves and seeds sitting on top of the trash in a trash can next to the dresser in the motel room. Both of these items were in plain view. The officers testified they searched between the mattresses on appellant's bed because they feared he may have a weapon there. Upon lifting the mattress of appellant's bed, Officer Jones found cocaine.

In *Jones,* the court of criminal appeals cited *Chimel v. California,* 395 U.S. 752, 762–64, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), as follows, in pertinent part:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment

or destruction.... There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.* at 856.

In *Jones,* the appellant was arrested in his residence on a felony arrest warrant. The officers seized a .38 caliber pistol from underneath some towels on a linen shelf, two watches in plain view, and a radio in plain view. *Id.* at 856. The *Jones* court found the arrest warrant clearly authorized the officers entry into the appellant's apartment to arrest him. *Id.* at 857. The court found that even if the seizure of the items was not justified under the "search incident to arrest" principle, the items were properly seizable under the "plain view" doctrine. *Id.* The court found the police did not use the "plain view" doctrine "to extend a general exploratory search from one object to another until something incriminating at last emerged." *Id.*

In this case, the officers stated appellant had a history of violence and use of weapons and they feared for their safety. The initial search in the mattresses was for weapons, in the same room as the arrest, and in an area within appellant's "immediate control." *Id.* at 856. The officers found "destructible evidence" (cocaine) between the mattresses and were authorized to seize it. *Id.* Accordingly, the arrest of appellant, and the subsequent seizure of the cocaine, were valid.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, we find the trial court acted properly in denying appellant's motion to suppress. The court's ruling was reasonably supported by the record and is correct on the theories of law applicable to the case. Appellant's sole point of error is overruled and the judgment of the trial court is affirmed.