Affirmed and Opinion filed June 27, 2002









Affirmed and Opinion
filed June 27, 2002.       

 

                                                

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00544-CR  

____________

 

PATRICK CORNELL
VANN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 




 
 
 
 
 
 
 





 
 
 
 
 
 
 
 
 
 
 
 
 
  
 







 
 
 
 
 
 
 
 
 
 
 
 
 
  
 




On Appeal from the
178th District Court

Harris County, Texas

Trial Court Cause
No.  837,123

 




 
 
 
 
 
 
 





 
 
 
 
 
 
 
 
 
 
 
 
 
  
 





 
 
 
 
 
 
 
 
 
 
 
 
 
  
 




O P I N I O N

            Appellant
Patrick Cornell Vann was certified to stand trial as an adult for capital
murder, found guilty by a jury, and given a mandatory life sentence.  See Tex.
Pen. Code §§ 8.07(c), 12.31(a).  He now appeals the trial court’s ruling on
his motion to suppress a firearm and a statement he made in police
custody.  We affirm.

            On November 30, 1999,
appellant (who was fifteen at the time) and an accomplice robbed a convenience
store.  In the course of the robbery,
appellant shot and killed the clerk.  The
following day, appellant used the same handgun in an unrelated shooting.  He then fled to his aunt’s house — where he
often stayed — changed his bloody clothes, and hid the handgun in an old
refrigerator in the backyard before departing again.

            Witnesses to the second
shooting knew appellant, and shortly after he left his aunt’s house, police
arrived looking for him.  The officers
obtained the consent of Leticia Vann, appellant’s twenty-five-year-old cousin
(the daughter of his aunt), to search for him, and found the handgun in the
backyard refrigerator.  

A few hours later, police arrested appellant for the second
shooting.  Because his cousin had seen
him enter her house wearing bloody clothes, she also went to the police station
to give a statement.  After a magistrate
gave appellant his juvenile warnings, detectives separately interviewed
appellant and Leticia.  In his statement,
appellant admitted placing the handgun in the refrigerator.[1]  When appellant went before the magistrate
again and signed his statement, the detective who interviewed appellant told
Leticia what was occurring.  By that
point, appellant had been in police custody about two and one-half hours.  Officers in the juvenile division contacted
appellant’s mother sometime later.

            At the hearing on his
motion to suppress, appellant attempted to exclude (1) his statement under the
Texas exclusionary rule,[2]
based on a violation of Family Code section 52.02(b), and (2) the handgun
(proven to have been used in both shootings), based on a warrantless
search that allegedly exceeded the scope of consent.  The trial court denied the motion to
suppress.

Standard of Review

            In reviewing the
trial court’s ruling on a motion to suppress, we afford almost total deference
to a trial court’s determination of historical facts, and if no fact findings
are filed we presume the trial court made implicit findings of fact that
support its ruling, provided these facts are supported by the record.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  We review de novo application-of-law-to-fact
questions that do not turn on an evaluation of credibility and demeanor.  Id. at 856.  Because both questions at issue fall into
this category, we will view the evidence in the light most favorable to the
trial court’s ruling and review de novo the trial court’s resolution of both
questions.  See Contreras v.
State, 67 S.W.3d 181, 185 (Tex. Crim. App. 2001)
(applying de novo review to determine if forty-five-minute delay was “unnecessary”
under 52.02(a)); In re C.R., 995 S.W.2d 778, 783 (Tex. App.—Austin 1999,
pet. denied) (applying de novo review to question of compliance with 52.02(b));
Simpson v. State, 29 S.W.3d 324, 327, 330 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d) (setting out de novo
standard in case involving scope of consent to search).

Whom to Notify 

            In his first point of error, appellant contends his
statement was obtained in violation of Family Code section 52.02(b).  That section requires a person taking a
juvenile into custody to “promptly give notice of his action and a statement of
the reason for taking the child into custody, to . . . the child’s parent,
guardian, or custodian.”  Tex. Fam. Code § 52.02(b). 
Once a juvenile produces evidence that section 52.02 was violated, the
burden shifts to the State to show compliance. 
See Roquemore v. State,
60 S.W.3d 862, 869 (Tex. Crim. App. 2001).  Appellant does not take issue with the
content of the officer’s notification. 
Instead, he argues that the notice was not prompt and the officers
should have given notice to his mother instead of his adult cousin.

The State argues that Leticia Vann qualified as appellant’s “custodian.”  The Code defines this term as “the adult with
whom the child resides.”  Tex. Fam. Code § 51.02(3).  It
is clear from the record before us that appellant did not have a single, fixed
residence.  Testimony indicated that
officers had contacted appellant’s mother on an earlier occasion, at which time
she told the police that appellant “stayed where and when he wanted.”  It is also clear that appellant’s cousin
Leticia was the principal adult in the home where he often resided.  Leticia’s mother (appellant’s aunt) raised
him since he was two weeks old. 
Appellant had his own bedroom at the house and kept belongings
there.  Leticia was the adult who was
most often at that home, and reported that appellant lived with her and her
mother most of the time.  At the time
police took appellant into custody, he was still “in and out” of Leticia’s
home, although he was supposed to be living with his mother.  Appellant’s written statement confirmed that
he lived with his mother but sometimes spent the night at his aunt’s
house.  

Viewing the evidence in the light most favorable to the trial court’s
ruling,[3]
we find appellant’s cousin Leticia qualifies as his “custodian” within the
meaning of the Code, and find under the circumstances of this case that notice
to her complied with section 52.02(b).  

When to Notify

Appellant also argues in point of error one that the police violated
section 52.02(b) because their notification was not prompt.  In resolving this issue, other courts have
considered (1) the length of time the juvenile had been in custody before the
police notified a parent, guardian, or custodian; (2) whether notification
occurred after the police obtained a statement; (3) the ease with which the
police were ultimately able to contact the appropriate adult; and (4) what the
police did during the period of delay.[4]  

Here, the delay was approximately two and one-half hours long, and
although officers could have notified Leticia earlier, they waited until
appellant was being taken before a magistrate to sign his written statement.[5]  But Leticia was present when the police
apprehended and arrested appellant.  She
witnessed his attempt to hide evidence and advised him to turn himself in to
the police.  She was also present at the
police station and knew when appellant was giving a statement to the police.[6]  

In order for evidence to be excluded under Code of
Criminal Procedure article 38.23, there must be a causal connection between the
illegal conduct and the acquisition of evidence.  Gonzalez v. State, 67 S.W.3d 910, 912
(Tex. Crim. App. 2002); Roquemore
v. State, 60 S.W.3d 862, 870-71 (Tex. Crim. App.
2001) (finding causal connection when, but for violation of § 52.02(a), the police would not have obtained
evidence when they did).  Here, we find
no causal link between the delay in notifying Leticia and appellant’s
statement.  Consequently, the trial court
properly denied appellant’s motion to suppress the statement made in
custody.  We overrule appellant’s first
point of error.

The discussion of the issues two and three does not
meet the criteria for publication set forth in Texas Rule of Appellate
Procedure 47.4.  Accordingly, the
remainder of the opinion is not designated for publication.

            We
affirm the judgment of the trial court.

___________________________________________________________________________

Scope of Consent Search

In appellant’s second and third points of error, he
argues the trial court should have suppressed the handgun under the Texas and
federal constitutions because the officers exceeded the scope of Leticia’s
consent to search.  See U.S. Const. amend. IV; Tex. Const. art. I, § 9.  In
response, the State argues appellant failed to meet the initial burden of proof
placed on a defendant to defeat the presumption of proper police conduct.  See Russell v. State, 717
S.W.2d 7, 9 (Tex. Crim. App. 1986).  But defense counsel repeatedly asked one of
the officers who searched the house if any officer obtained an arrest
warrant for appellant, and the officer replied “No.”  An arrest warrant would have authorized the
police to search for appellant at his residence.  See Payton v. New York, 445
U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980); Morgan v. State, 963 S.W.2d
201, 203–04 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  Given the facts detailed above, Leticia’s
house would be considered appellant’s residence for Fourth Amendment purposes,
even if he also had another residence elsewhere.  See Morgan, 963 S.W.2d at 204 (citing United
States v. Risse, 83 F.3d 212, 217 (8th Cir.
1996)).  Thus, appellant met his initial
burden of negating the presumption of proper police conduct by establishing
that officers searched Leticia’s house and yard without an arrest warrant.

Even if appellant overcame the initial burden of proof, however, the
trial court properly denied the motion to suppress because the officers acted
within the scope of Leticia’s consent to search.  See Carmouche v.
State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000)
(finding consent to search a well-established exception to warrant
requirement).  When officers arrived at
Leticia’s house, Leticia told them appellant had just left.  They obtained her consent to look for him,
and searched for him in the house and yard.[7]  One officer looked inside an old refrigerator
in the backyard and saw the handgun in plain view near the bottom of the
refrigerator.  

The extent of the search is limited to the scope of the consent given,
and the scope of the consent is generally defined by its expressed object.  See Florida v. Jimeno,
500 U.S. 248, 251, 111 S. Ct. 1801, 1804 (1991).  When the scope of consent is confined to a
search for certain items, the search must be restricted to those objects and
areas which are likely to contain the items sought.  See Simpson
v. State, 29 S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d); United States v. Dichiarinte,
445 F.2d 126, 129–30 (7th Cir. 1971). 
When the police are legitimately on the premises pursuant to a consent
to search, they may seize the objects sought as well as other incriminating
evidence in plain view.  See Coolidge v. New Hampshire,
403 U.S. 443, 465–66, 91 S. Ct. 2022, 2037–38 (1971).

Although the officer admitted he was also looking for the handgun,
because he looked only in places where a person could have been hiding (like
the refrigerator), the officer was acting within the scope of the consent when
he found the handgun.  Because it was not
obtained in violation of appellant’s rights under either the Texas or federal
constitutions, we overrule appellant’s second and third issues.

We affirm the judgment of the trial court.

 

                                                                        

                                                                        /s/        Scott Brister

Chief Justice

 

 

Judgment rendered and Opinion filed June 27, 2002.

Panel consists of Chief Justice Brister
and Justices Anderson and Frost.

Publish in part; do not publish in part—Tex. R. App. P. 47.3(b).

 











[1] Appellant’s statement did not mention the convenience store robbery or
murder.  Although it had occurred the day
before, police did not question appellant about the murder because they did not
yet consider him a suspect in that case.

 





[2] Tex. Code Crim. Proc. Ann.
art. 38.23(a) (Vernon Supp. 2002).





[3] See Contreras, 67 S.W.3d at 185-86. 

 





[4] See, e.g., Gonzales v. State, 67 S.W.3d 910, 911 (Tex. Crim. App. 2002) (noting five to six-hour delay in
notification that came only after juvenile was processed into detention
facility); Hampton v. State, 36 S.W.3d 921, 924 (Tex. App.—El Paso 2001,
pet. granted) (finding delay violated § 52.02(b) when notification
was delayed until juvenile was giving statement); Hill v. State, No.
12-00-00172-CR, 2001 WL 493275, at *7 (Tex. App.—Tyler May 9, 2001, pet. ref’d) (finding four hour and twenty-minute delay not
prompt when officers waited until after juvenile confessed, and reached mother
on first attempt at contact); In re C.R., 995 S.W.2d 778, 783 (Tex. App.—Austin
1999, pet. denied) (declining to hold one or two-hour delay alone would violate
§ 52.02(b)).

 





[5] The State argues that according to the record, the officers notified
Leticia before they interviewed him. 
The officer’s testimony that the State relies on, however, at best
suggests that he notified Leticia either before or sometime during the
hour he spent with appellant.  The same
officer later said he notified Leticia “as [appellant] was being brought back
to the magistrate” for the second time.

 





[6]
Because she was present, the facts here are unlike those in Comer v.
State, 776 S.W.2d 191, 196-97 (Tex. Crim. App.
1989), in which the Court found the violation of section 52.02(a) may have
affected the juvenile’s decision to confess.

 





[7] Although Leticia testified that officers asked only to look in the
house, the officers testified otherwise. 
As Leticia told the police appellant had been in the backyard a little
while before, they testified they asked for and obtained her consent to look
for him in both the house and yard.  This
evidence supports an implied finding by the trial court that Leticia’s consent
extended to the yard.