COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-365-CR

 

 

RICKY DALE WILLIAMS                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 78TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

In a single issue, appellant Ricky Dale Williams
challenges the trial court=s denial
of his motion to suppress evidence found by police during a Aprotective
sweep@ of
appellant=s home.  We affirm.








Background

On May 6, 2005, Lieutenant John David Duke from
the Wichita County Sheriff=s
Office, along with at least four deputies, went to appellant=s house
to serve an arrest warrant on James Shirey. 
The sheriff=s office had received
information that Shirey was staying with appellant.  Lieutenant Duke testified that when he and
the deputies arrived at appellant=s house,
he and Deputy Kenny Lemons went to the rear of the house while the others went
to knock on the front door. 
Additionally, Officer Robinson stopped a vehicle that was backing out of
the driveway.  At the back of the house,
Lieutenant Duke saw a parked car with a woman and child inside, and he talked
to them.  Deputy Lemons then heard people
talking in the house and knocked on the window. 
A man named Prentice Rogers opened the back door.  The officers asked Rogers where appellant was
and if Shirey was at the house.  Rogers
said he did not know where Shirey was but that appellant was home; he opened
the door and told the officers appellant was in the living room.  The officers then stepped inside.








According to Lieutenant Duke, they first stepped
into the kitchen and could see appellant in the living room at the front door
talking with at least one of the deputies. 
They could see Shirey was not in the living room or kitchen; they asked
a female sitting on the couch whether anyone else was in the house, and she
said she did not know.  So Lieutenant
Duke went into the master bedroom, which he later determined belonged to
appellant, and Deputy Lemons went into a second bedroom.  The first thing Lieutenant Duke did was look
under the bed.  He then opened the closet
door to check if someone was hiding inside. 
He found a Atwo foot by three foot by maybe
a foot-and-a-half deep@ safe on the closet floor.  Its 
door was open about four or five inches, and Lieutenant Duke saw the
handles of two pistols inside Ain what
[he] would consider to be open view.@  Lieutenant Duke=s search
of the bedroom took about forty-five seconds.

After he saw the pistols, Lieutenant Duke left
the bedroom and saw that appellant was Aout back@ talking
with another deputy.  He talked to the
other deputies about whether appellant had been previously convicted of a
felony; after determining that appellant had been, Lieutenant Duke retrieved
the pistols, walked back through the house, and asked appellant who they
belonged to.  Appellant denied that the
pistols were his.  Lieutenant Duke said
the purpose of the protective sweep was not to check any warrants but to look
for individuals.  Sometime after
Lieutenant Duke finished the protective sweep, another deputy located Shirey
outside the house hiding inside a third car.








Four days later, the sheriff=s office
obtained a search warrant for appellant=s home
to look for additional A[f]irearms, parts of guns,
ammunition, [and] anything firearm-related.@  They found additional firearms and chemicals
commonly used in the manufacture of methamphetamine.  Three months later, the sheriff=s office
obtained another search warrant based on information that appellant possessed a
live hand grenade; they also had arrest warrants based on four possession of a
firearm by a felon charges arising out of the two prior searches.  The county SWAT team made a tactical entry to
serve those warrants and found appellant in the master bedroom.  In executing the search warrant, the sheriff=s office
found additional items commonly used in manufacturing methamphetamine, along
with a powdery substance that appeared to be methamphetamine.

On cross-examination, Lieutenant Duke admitted
that he did not rely on appellant=s consent
in entering the home to look for Shirey; however, he admitted that he did not
know what appellant had said to the other deputies at the front door.  He also stated that when Rogers let them in
the house, he Atook [them] to the owner of the
house [appellant], who did not deny [them] to look for . . . Shirey.@  In other words, Lieutenant Duke testified,
appellant did not say, AHe=s not
here.  [Instead, h]e wasn=t
telling@ them.








Sergeant Christopher Taylor of the Wichita Falls
Police Department helped execute the second and final search warrant at
appellant=s house.  Lieutenant Duke pointed out several items
that were in plain view, including two or three propane tanks in the kitchen,
valves, corroded brass valve fittings with Teflon tape on them, plastic bottle
caps with tubing, rock salt, and several methamphetamine pipes.  Sergeant Taylor testified, based on his
experience and training, that these items are commonly used in methamphetamine
labs.  In the refrigerator, officers
found a tank containing anhydrous ammonia, another ingredient used to
manufacture methamphetamine.

A grand jury subsequently indicted appellant for
possession of anhydrous ammonia with the intent to manufacture
methamphetamine.  Appellant moved to
suppress the anhydrous ammonia found in his house on the ground that the
initial protective sweep of his house during the Shirey arrestCwhich
yielded the two pistols that formed the basis of the first search warrantCexceeded
the permitted scope; thus, the first search warrant and the second search
warrant were invalid as fruits of the poisonous tree.  After hearing evidence, the trial court
denied the motion to suppress.  The
motion was relitigated at trial, and the jury charge contained the following
instruction:

An officer can perform a cursory sweep of a house that he has lawfully
entered to reasonably secure the house for officer safety.

 








If you believe by a preponderance of the evidence that on or about May
6, 2005, that Lt. David Duke was not lawfully in the house or that his sweep of
the house was not a cursory sweep intended to reasonably secure the premises
for officer=s [sic] safety, then you
will not consider any evidence that resulted from that sweep or any evidence
that was subsequently obtained as a result of that sweep.

 

The jury convicted appellant, and the trial court
assessed punishment at sixty-five years=
confinement.

Issue on Appeal

Appellant contends that the officers= sweep
of the home, including Lieutenant Duke=s entry
into the bedroom and closet, was not based on an objective, reasonable belief,
based on specific and articulable facts, that a person in that area posed a
danger to an officer or to other people in the area; therefore, the search
exceeded the permissible scope of a protective sweep.  Because the anhydrous ammonia that the State
accused appellant of possessing was eventually found as a result of the
protective sweep, appellant thus contends that the anhydrous ammonia should be
suppressed.

Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, viewed in the light most favorable
to the trial court=s ruling, supports those fact
findings.  Kelly, 204 S.W.3d at 818B19.  We
then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

When the record is silent on the reasons for the
trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Id.;
see  Amador, 221 S.W.3d at 673; Wiede,
214 S.W.3d at 25.  We then review the
trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  Kelly, 204 S.W.3d
at 819.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).

Applicable Law








AA >protective
sweep= is a >quick
and limited search of premises, incident to an arrest and conducted to protect
the safety of police officers or others.=@  Reasor v. State, 12 S.W.3d 813, 815
(Tex. 2000) (quoting Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct.
1093, 1094 (1990)).  It must extend no
further than Aa cursory inspection of those
places where a person may be found.@  Buie, 494 U.S. at 327, 110 S. Ct. at
1094.  In addition, it may only last long
enough to Adispel the reasonable suspicion
of danger.@ 
Reasor, 12 S.W.3d at 816 (quoting Buie, 494 U.S. at 335,
110 S. Ct. at 1093)).  AThe
Fourth Amendment permits a properly limited protective sweep in conjunction
with an in‑home arrest when the searching officer possesses a reasonable
belief based on specific and articulable facts that the area to be swept
harbors an individual posing a danger to those on the arrest scene.@  Buie, 494 U.S. at 337, 110 S. Ct. at
1093; Reasor, 12 S.W.3d at 816. 
The standards for determining validity of a sweep under the Fourth
Amendment and the Texas Constitution are the same.  Reasor, 12 S.W.3d at 816B17.

Analysis








Here, appellant challenges the scope of the
protective sweep on the ground that Lieutenant Duke had no specific,
articulable facts that would have led a reasonable officer to believe that a
person in the area posed a danger to Lieutenant Duke or to other people in the
area.  He has not challenged the officers= entry
into his home either on appeal or at trial.[2]  Instead, appellant=s
arguments have been limited only to the assertion that the officers exceeded
the scope of a valid protective sweep in that nothing justified a concern that
dangerous persons might be concealed in the bedroom areas of the house.

Appellant specifically points to the following
testimony elicited from Lieutenant Duke:

Q.     Okay.  Now, when you=re looking for a felon
who has a warrant out for him such as Mr. Shirey, and you go into a house like
this, do you have any fears for your safety?

 

A.     Yes, we do.

 

Q.     Okay.  Can you just kind
of generally, tell us why?

 

A.     Just
officer safety for other felons or people that we don=t know
who may have reasons to harm police or try to escape, for whatever reason they
have.

According to appellant, this testimony is too general and does not
show specific, articulable facts supporting the sweep.













The State, however, points to other facts
supporting the officers= decision to perform a
protective sweep once inside the house. 
The officers were aware that the house was a Anarcotics
trafficking@ location.  In addition, they were seeking to arrest
Shirey on a felony warrant.  We also note
other facts supporting the decision:  (1)
when officers arrived at the home, at least one person was trying to leave,
backing a car out of the driveway; (2) the officers encountered more people in
a car behind the house, then heard voices inside the house; (3) when police
entered the home with Rogers=s
consent, they saw a woman on the couch and appellant at the door, as well as
Rogers; (4) when asked if Shirey was at the house (as they had been led to
believe by an informant=s tip), the woman on the couch
said she did not know; (5) appellant was known to Lieutenant Duke as a
convicted felon; and (6) Lieutenant Duke testified that Rogers, who admitted
the officers into appellant=s home,
frequently had warrants out for his arrest. 
We hold that all of these facts, testified to by Lieutenant Duke,
justify a reasonable belief that a person potentially posing a danger to the
officers could have been found in either of the two bedrooms or bedroom
closets.  See United States v.
Lawrence, No. 3:07-CR-127, 2008 WL 5120957, at *5B6 (E.D.
Tenn. Dec. 3, 2008) (AThe combination of evidence
indicating drug trafficking and the potential presence of additional hidden
persons in the apartment warranted a protective sweep of other places where an
individual could be hiding.@); United
States v. Salgado, 06 CR 860, 2008 WL 4951216, at *7 (N.D. Ill. Nov. 18,
2008); cf. United States v. Smith, 131 F.3d 1392, 1396B97 (10th
Cir. 1997) (holding protective sweep valid when officers fanned out around
known drug location to serve arrest warrant on nonowner resident and officer
pulled back flap over window and saw drug paraphernalia), cert. denied,
522 U.S. 1141, 523 U.S. 1030, 523 U.S. 1086 (1998)..  Accordingly, we overrule appellant=s issue.

Conclusion

Having overruled appellant=s sole
issue on appeal, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

PANEL:  LIVINGSTON and DAUPHINOT, JJ.; and DIXON W.
HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment)

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 29, 2009

 











[1]See Tex. R. App. P. 47.4.





[2]Absent the existence of
exigent circumstances or consent, police may not enter a residence pursuant to
an arrest warrant for a nonresident without first obtaining a search
warrant.  Steagald v. United States,
451 U.S. 204, 205B06, 101 S. Ct. 1642, 1644
(1981); Hudson v. State, 662 S.W.2d 957, 958 (Tex. Crim. App. 1984).