

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-07-365-CR


RICKY DALE WILLIAMS                                           APPELLANT

V.

THE STATE OF TEXAS                                               STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In a single issue, appellant Ricky Dale Williams challenges the trial court's

denial of his motion to suppress evidence found by police during a "protective

sweep" of appellant's home.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## Background

On May 6, 2005, Lieutenant John David Duke from the Wichita County Sheriff's Office, along with at least four deputies, went to appellant's house to serve an arrest warrant on James Shirey. The sheriff's office had received information that Shirey was staying with appellant. Lieutenant Duke testified that when he and the deputies arrived at appellant's house, he and Deputy Kenny Lemons went to the rear of the house while the others went to knock on the front door. Additionally, Officer Robinson stopped a vehicle that was backing out of the driveway. At the back of the house, Lieutenant Duke saw a parked car with a woman and child inside, and he talked to them. Deputy Lemons then heard people talking in the house and knocked on the window. A man named Prentice Rogers opened the back door. The officers asked Rogers where appellant was and if Shirey was at the house. Rogers said he did not know where Shirey was but that appellant was home; he opened the door and told the officers appellant was in the living room. The officers then stepped inside.

According to Lieutenant Duke, they first stepped into the kitchen and could see appellant in the living room at the front door talking with at least one of the deputies. They could see Shirey was not in the living room or kitchen; they asked a female sitting on the couch whether anyone else was in the

2

house, and she said she did not know. So Lieutenant Duke went into the master bedroom, which he later determined belonged to appellant, and Deputy Lemons went into a second bedroom. The first thing Lieutenant Duke did was look under the bed. He then opened the closet door to check if someone was hiding inside. He found a "two foot by three foot by maybe a foot-and-a-half deep" safe on the closet floor. Its door was open about four or five inches, and Lieutenant Duke saw the handles of two pistols inside "in what [he] would consider to be open view." Lieutenant Duke's search of the bedroom took about forty-five seconds.

After he saw the pistols, Lieutenant Duke left the bedroom and saw that appellant was "out back" talking with another deputy. He talked to the other deputies about whether appellant had been previously convicted of a felony; after determining that appellant had been, Lieutenant Duke retrieved the pistols, walked back through the house, and asked appellant who they belonged to. Appellant denied that the pistols were his. Lieutenant Duke said the purpose of the protective sweep was not to check any warrants but to look for individuals. Sometime after Lieutenant Duke finished the protective sweep, another deputy located Shirey outside the house hiding inside a third car.

Four days later, the sheriff's office obtained a search warrant for appellant's home to look for additional "[f]irearms, parts of guns, ammunition,

3

[and] anything firearm-related." They found additional firearms and chemicals commonly used in the manufacture of methamphetamine. Three months later, the sheriff's office obtained another search warrant based on information that appellant possessed a live hand grenade; they also had arrest warrants based on four possession of a firearm by a felon charges arising out of the two prior searches. The county SWAT team made a tactical entry to serve those warrants and found appellant in the master bedroom. In executing the search warrant, the sheriff's office found additional items commonly used in manufacturing methamphetamine, along with a powdery substance that appeared to be methamphetamine.

On cross-examination, Lieutenant Duke admitted that he did not rely on *appellant's* consent in entering the home to look for Shirey; however, he admitted that he did not know what appellant had said to the other deputies at the front door. He also stated that when Rogers let them in the house, he "took [them] to the owner of the house [appellant], who did not deny [them] to look for . . . Shirey." In other words, Lieutenant Duke testified, appellant did not say, "He's not here. [Instead, h]e wasn't telling" them.

Sergeant Christopher Taylor of the Wichita Falls Police Department helped execute the second and final search warrant at appellant's house. Lieutenant Duke pointed out several items that were in plain view, including two or three

4

propane tanks in the kitchen, valves, corroded brass valve fittings with Teflon tape on them, plastic bottle caps with tubing, rock salt, and several methamphetamine pipes. Sergeant Taylor testified, based on his experience and training, that these items are commonly used in methamphetamine labs. In the refrigerator, officers found a tank containing anhydrous ammonia, another ingredient used to manufacture methamphetamine.

A grand jury subsequently indicted appellant for possession of anhydrous ammonia with the intent to manufacture methamphetamine. Appellant moved to suppress the anhydrous ammonia found in his house on the ground that the initial protective sweep of his house during the Shirey arrest—which yielded the two pistols that formed the basis of the first search warrant—exceeded the permitted scope; thus, the first search warrant and the second search warrant were invalid as fruits of the poisonous tree. After hearing evidence, the trial court denied the motion to suppress. The motion was relitigated at trial, and the jury charge contained the following instruction:

> An officer can perform a cursory sweep of a house that he has lawfully entered to reasonably secure the house for officer safety.
>
> If you believe by a preponderance of the evidence that on or about May 6, 2005, that Lt. David Duke was not lawfully in the house or that his sweep of the house was not a cursory sweep intended to reasonably secure the premises for officer's [sic] safety, then you will not consider any evidence that resulted from

that sweep or any evidence that was subsequently obtained as a result of that sweep.

The jury convicted appellant, and the trial court assessed punishment at sixty-five years' confinement.

## Issue on Appeal

Appellant contends that the officers' sweep of the home, including Lieutenant Duke's entry into the bedroom and closet, was not based on an objective, reasonable belief, based on specific and articulable facts, that a person in that area posed a danger to an officer or to other people in the area; therefore, the search exceeded the permissible scope of a protective sweep. Because the anhydrous ammonia that the State accused appellant of possessing was eventually found as a result of the protective sweep, appellant thus contends that the anhydrous ammonia should be suppressed.

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no

6

pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, viewed in the light most favorable to the trial

7

court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*.; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### Applicable Law

"A 'protective sweep' is a 'quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'"

*Reasor v. State*, 12 S.W.3d 813, 815 (Tex. 2000) (quoting *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094 (1990)).  It must extend no further than "a cursory inspection of those places where a person may be found." *Buie*, 494 U.S. at 327, 110 S. Ct. at 1094.  In addition, it may only last long enough to "dispel the reasonable suspicion of danger." *Reasor*, 12 S.W.3d at 816 (quoting *Buie*, 494 U.S. at 335, 110 S. Ct. at 1093)).  "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 337, 110 S. Ct. at 1093; *Reasor*, 12 S.W.3d at 816.  The standards for determining validity of a sweep under the Fourth Amendment and the Texas Constitution are the same. *Reasor*, 12 S.W.3d at 816–17.

**Analysis**

Here, appellant challenges the scope of the protective sweep on the ground that Lieutenant Duke had no specific, articulable facts that would have led a reasonable officer to believe that a person in the area posed a danger to Lieutenant Duke or to other people in the area.  He has not challenged the

9

officers' entry into his home either on appeal or at trial.[2]  Instead, appellant's arguments have been limited only to the assertion that the officers exceeded the scope of a valid protective sweep in that nothing justified a concern that dangerous persons might be concealed in the bedroom areas of the house.

Appellant specifically points to the following testimony elicited from Lieutenant Duke:

> Q.    Okay.  Now, when you're looking for a felon who has a warrant out for him such as Mr. Shirey, and you go into a house like this, do you have any fears for your safety?
>
> A.    Yes, we do.
>
> Q.    Okay.  Can you just kind of generally, tell us why?
>
> A.    Just officer safety for other felons or people that we don't know who may have reasons to harm police or try to escape, for whatever reason they have.

According to appellant, this testimony is too general and does not show specific, articulable facts supporting the sweep.

The State, however, points to other facts supporting the officers' decision to perform a protective sweep once inside the house.  The officers were aware

---

[2] Absent the existence of exigent circumstances or consent, police may not enter a residence pursuant to an arrest warrant for a nonresident without first obtaining a search warrant.  *Steagald v. United States*, 451 U.S. 204, 205–06, 101 S. Ct. 1642, 1644 (1981); *Hudson v. State*, 662 S.W.2d 957, 958 (Tex. Crim. App. 1984).

that the house was a "narcotics trafficking" location. In addition, they were seeking to arrest Shirey on a felony warrant. We also note other facts supporting the decision: (1) when officers arrived at the home, at least one person was trying to leave, backing a car out of the driveway; (2) the officers encountered more people in a car behind the house, then heard voices inside the house; (3) when police entered the home with Rogers's consent, they saw a woman on the couch and appellant at the door, as well as Rogers; (4) when asked if Shirey was at the house (as they had been led to believe by an informant's tip), the woman on the couch said she did not know; (5) appellant was known to Lieutenant Duke as a convicted felon; and (6) Lieutenant Duke testified that Rogers, who admitted the officers into appellant's home, frequently had warrants out for his arrest. We hold that all of these facts, testified to by Lieutenant Duke, justify a reasonable belief that a person potentially posing a danger to the officers could have been found in either of the two bedrooms or bedroom closets. *See United States v. Lawrence*, No. 3:07-CR-127, 2008 WL 5120957, at *5–6 (E.D. Tenn. Dec. 3, 2008) ("The combination of evidence indicating drug trafficking and the potential presence of additional hidden persons in the apartment warranted a protective sweep of other places where an individual could be hiding."); *United States v. Salgado*, 06 CR 860, 2008 WL 4951216, at *7 (N.D. Ill. Nov. 18, 2008); *cf. United*

11

*States v. Smith*, 131 F.3d 1392, 1396–97 (10th Cir. 1997) (holding protective sweep valid when officers fanned out around known drug location to serve arrest warrant on nonowner resident and officer pulled back flap over window and saw drug paraphernalia), *cert. denied*, 522 U.S. 1141, 523 U.S. 1030, 523 U.S. 1086 (1998).. Accordingly, we overrule appellant's issue.

### Conclusion

Having overruled appellant's sole issue on appeal, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON and DAUPHINOT, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment)

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 29, 2009