COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

       NOS.         2-09-104-CR

       2-09-105-CR

2-09-106-CR

2-09-107-CR

 

 

HERSCHEL JEROME HURD                                                              APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








Appellant
Herschel Jerome Hurd appeals his convictions for one count of aggravated
robbery with a deadly weapon and three counts of aggravated assault with a
deadly weapon.[2]  In two issues, he contends that the trial
court erred by failing to suppress evidence related to the victim=s
identification of him and by failing to suppress evidence obtained as the
result of an allegedly unlawful execution of his arrest warrant.  We affirm.

Background Facts

In
2005, the State filed three indictments against appellant for aggravated
assaults that occurred on the same day in October 2004; the indictments alleged
that appellant struck someone with a club or bat that qualified as a deadly
weapon.  Appellant pled guilty to each
indictment.  The trial court deferred its
adjudication of appellant=s guilt in each case and
placed him on ten years= community supervision.

A
few years later, in April 2008, Ibrahim Soliman was working as a cashier at
Quick Food Grocery in Arlington when a customer entered the store wearing white
gloves and sunglasses.  The customer
walked around the counter toward the cash register, commanded Soliman to open
the register, held a silver gun to Soliman=s
face, took about $200, and left the store. 
Soliman feared for his life.








Arlington
Police Department Detective Anthony Wright arrived at the crime scene and met
with Soliman, who came to the United States from Egypt and speaks only some
English.  Detective Wright reviewed video
surveillance from Quick Food Grocery and noticed that the robber was a black
male who had a light skin tone and medium body size.  He also saw that the robber used a chrome gun
and wore a dark Ado-rag,@
sunglasses, shorts with a distinctive pattern, and white gloves.  Video surveillance from a restaurant located
next to Quick Food Grocery showed that a mid-sized dark car had parked close to
the grocery store near the time of the robbery, that someone who appeared to
look like the robber had stepped out of the car, and that the car left after
the time that the robbery occurred.

Detective
Wright prepared a photographic spread that contained mug shots of six people,
and six days after the robbery occurred, Soliman selected appellant as the
robber.[3]  The police got a warrant for appellant=s
arrest.  To execute the warrant, they
first went to an Arlington address listed on one of appellant=s
identification cards and found appellant=s
father but not appellant.  Appellant=s
father took the police to a Grand Prairie apartment where appellant was
staying.  Courtney Gibbs, appellant=s
girlfriend, answered the door.  The
police determined that appellant was inside the apartment, entered inside, and
arrested him.

A
grand jury indicted appellant with committing aggravated robbery against
Soliman.  The indictment contained a
repeat offender notice stating that appellant had previously been convicted of
a felony.  Appellant moved to suppress
any in-court identification of him by Soliman and any evidence the police
gathered as a result of his allegedly illegal arrest.  The State petitioned the trial court to
proceed to adjudication of guilt in each of appellant=s
aggravated assault cases on the basis that he had committed a new offense by
possessing a firearm within five years of his release from confinement
following a felony conviction.[4]








At
his trial, appellant pled not guilty to aggravated robbery and not true to the
State=s
petitions to proceed to adjudication in the aggravated assault cases.  The jury convicted appellant of aggravated
robbery, and after the jury received evidence from several witnesses related to
appellant=s
punishment, it assessed fifty years=
confinement.[5]  The trial court sentenced him
accordingly.  It also revoked his
community supervision in the three aggravated assault cases, found him guilty
of each of those charges, and sentenced him to twenty years=
confinement on each charge to run concurrently with his other sentences.  Appellant filed notices of appeals on all
cases. 

Appellant=s
Arrest








In
his second issue, appellant contends that the trial court abused its discretion
by denying his motion to suppress evidence obtained as the result of an
allegedly unlawful entry into the Grand Prairie apartment when the police
arrested him.[6]  We review a trial court=s
ruling on a motion to suppress evidence under a bifurcated standard of
review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Orr v. State, 306 S.W.3d 380,
398 (Tex. App.CFort
Worth 2010, no pet.).  In reviewing the
trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Orr, 306 S.W.3d at 398.  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  Wiede v. State, 214
S.W.3d 17, 24B25
(Tex. Crim. App. 2007); Orr, 306 S.W.3d at 398.

Therefore,
we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Johnson, 68 S.W.3d at 652B53.  Stated another way, when reviewing the trial
court=s
ruling on a motion to suppress, we must view the evidence in the light most
favorable to the ruling.  Wiede,
214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App.
2006).








The
Fourth Amendment states, AThe right of the people to
be secure in their persons, houses, papers, and effects, against unreasonable
searches and seizures, shall not be violated . . . .@  U.S. Const. amend. IV; see State v. Powell,
306 S.W.3d 761, 765 (Tex. Crim. App. 2010). 
We have explained that the Aright
of a man to retreat into his own home and to be free from unreasonable
governmental intrusion stands at the very core of the Fourth Amendment.@  Green v. State, 78 S.W.3d 604, 608B09
(Tex. App.CFort
Worth 2002, no pet.) (citing Silverman v. United States, 365 U.S. 505,
511, 81 S. Ct. 679, 683 (1961)).

Thus,
absent exigent circumstances or consent, police may not enter a residence under
an arrest warrant for a nonresident without first obtaining a search
warrant.  Steagald v. United States,
451 U.S. 204, 205B06, 101 S. Ct. 1642, 1644
(1981); Hudson v. State, 662 S.W.2d 957, 958 (Tex. Crim. App.
1984).  However, an arrest warrant
authorizes entry into a defendant=s
own residence when there is reason to believe that the defendant is within.  Payton v. New York, 445 U.S. 573, 602B03,
100 S. Ct. 1371, 1388 (1980) (explaining that if there Ais
sufficient evidence of a citizen=s
participation in a felony to persuade a judicial officer that his arrest is
justified,@ the
police may Arequire
him to open his doors@); Reno v. State, 882
S.W.2d 106, 108 (Tex. App.CFort
Worth 1994, pet. ref=d); see also Morgan v.
State, 963 S.W.2d 201, 204 (Tex. App.CHouston
[14th Dist.] 1998, no pet.) (explaining that if the suspect is a co‑resident
of a third party, then Steagald does not apply, and Payton allows
the arrest of the subject under an arrest warrant).  An officer=s
reasonable belief, considering all the circumstances known to the officer, that
a residence is the defendant=s
and that the defendant is inside authorizes entry into the residence to arrest
the defendant under an arrest warrant; the officer=s
belief does not have to be proven correct. 
See Green, 78 S.W.3d at 611B14; Morgan,
963 S.W.2d at 204.








Thus,
appellant concedes that if the police had a reasonable belief that he lived at
the Grand Prairie apartment where he was arrested, the Aarrest
warrant alone would support entrance into the apartment.@  However, he contends that he did not reside
in Grand Prairie but was only Gibbs=s
houseguest; therefore, he claims that all evidence resulting from his allegedly
unlawful arrest should have been suppressed.

At a
pretrial hearing on appellant=s
motion to suppress, Detective Wright testified that after he obtained appellant=s
arrest warrant, he discovered an Arlington apartment address on appellant=s
identification card and went with other officers to that address Aas a
starting point . . . to determine what [appellant=s]
current address was.@  According to Detective Wright, appellant=s
father answered the door and said that appellant did Anot
live there@ but
instead lived Ain
an apartment in Grand Prairie with his girlfriend, Courtney Gibbs@ and
that appellant Awould be at that apartment.@

Appellant=s
father went to the Grand Prairie apartment with the police. The police knocked
on the door and Gibbs answered, at which time officers removed her from the
front of the doorway, went into the apartment, and called out for appellant,
who was in a bedroom.  The officers told
appellant about his arrest warrant, and according to Detective Wright,
appellant told him that he lived at that apartment and refused to give the
officers consent to search it. Detective Wright secured a search warrant for
the apartment and found items connecting appellant to Soliman=s
robbery.








Appellant
called his father and Gibbs to testify at the hearing.  Appellant=s
father testified, among other facts, that

$       
when
the police arrived in Arlington, they searched his apartment and went into
appellant=s room;

 

$       
he
told the police that appellant was Aprobably at his girlfriend=s house@ because appellant
stayed there overnight occasionally;

 

$       
appellant
did not live at the Grand Prairie apartment because he spent most nights in
Arlington and gave his father money for rent and food;

 

$       
appellant
worked at the same place as his father, and his father would sometimes (about
twice per week) pick appellant up at the Grand Prairie apartment before work
after he had stayed with Gibbs overnight;

 

$       
on
other mornings (about once per week), Gibbs would take appellant to work after
he had stayed overnight with her; and

 

$       
he does not recall telling the police that
appellant lived with Gibbs.

Gibbs testified to the
following facts:

$       
appellant
visited her at her apartment three or four times per week and had brought some
of his possessions to her apartment because he was her boyfriend, but appellant
did not live with her and was not going to stay with her overnight on the night
of his arrest;

 

$       
appellant=s name is not on her
lease contract;

 

$       
appellant
did not help her with rent and did not have a key to her apartment; and

 

$       
she
wrote a love letter to appellant three days before appellant=s arrest that
included the words, AWe wake up to each
other everyday,@ although she said
that the letter was exaggerated and she did not literally wake up with him
every morning.

 








Obviously,
these witnesses= testimony required the
trial court to resolve conflicting evidence. 
At the conclusion of the suppression hearing, the trial court
specifically found that the witnesses appellant called were not credible, and
the court therefore denied appellant=s
motion.








As
explained above, we must defer to the trial court=s
credibility determination and its resolution of conflicting evidence.  See Amador, 221 S.W.3d at 673; Orr,
306 S.W.3d at 398, 400.  If the trial court believed Detective Wright=s
testimony that before the police entered the Grand Prairie apartment, appellant=s
father told them that appellant did not live with him but instead lived with
Gibbs, we must defer to the trial court=s
rejection of the conflicting evidence offered by appellant=s
witnesses in that regard.  Viewing the
evidence in the light most favorable to the trial court=s
ruling, we hold that the trial court could have justifiably determined that the
police reasonably believed that appellant resided at the Grand Prairie
apartment where they executed the arrest warrant.[7]  See Wiede, 214 S.W.3d at 24; Green,
78 S.W.3d at 611B14; Morgan, 963
S.W.2d at 204.  We uphold both the trial
court=s
implicit determination that the police constitutionally entered the apartment
to arrest appellant and the court=s
explicit denial of appellant=s
motion to suppress the evidence obtained as a result of his arrest.  We overrule appellant=s
second issue.

Soliman=s
Identification of Appellant

In
appellant=s
first issue, he argues that the trial court erred by denying his motion to
suppress Soliman=s in-court
identification.  He asserts that the
in-court identification was based on a pretrial identification procedure that
was allegedly impermissible and suggestive because (1) Detective Wright used a
photographic array on one sheet of paper rather than a sequential photographic
lineup procedure, (2) Soliman understood little English and Detective Wright
did not use an interpreter, (3) Detective Wright may not have told Soliman that
the suspect may or may not have been included in the photographic array, and (4) Soliman
had a shaky recollection at trial of what appellant was wearing during the
robbery.  See Gamboa v. State,
296 S.W.3d 574, 581B82 (Tex. Crim. App. 2009); Stewart
v. State, 198 S.W.3d 60, 62 (Tex. App.CFort
Worth 2006, no pet.).








Assuming
without deciding that appellant=s
due process rights were violated by the admission of Soliman=s
identification testimony, we would be required to determine whether the trial
court=s
admission of the testimony caused harm.[8]  See Tex. R. App. P. 44.2(a); Wheat
v. State, 178 S.W.3d 832, 833 (Tex. Crim. App. 2005) (stating that except
for Astructural@
errors, no error is categorically immune from a harm analysis); Ledesma v.
State, 828 S.W.2d 560, 563 (Tex. App.CEl
Paso 1992, no pet.); Cabello v. State, 655 S.W.2d 293, 296 (Tex. App.CCorpus
Christi 1983, no pet.) (A[I]f the admission of Mejia=s
identification testimony could be considered error, it was harmless, in light
of the unimpeached and uncomplained of identification of the appellant by
Officer Garza.@); see
also Perez v. State, No. 03‑07‑00606‑CR, 2009 WL 2195417,
at *5 (Tex. App.CAustin July 23, 2009, no
pet.) (mem. op., not designated for publication) (AWe
need not determine whether the procedures used were impermissibly suggestive
such that they created a substantial likelihood of misidentification because,
even assuming that Perez could prevail on this argument, any error is harmless.@).








When
we review constitutional error, we Amust
reverse a judgment of conviction or punishment unless [we determine] beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment.@  Tex. R. App. P. 44.2(a).  To make this determination, we should
calculate the probable impact of the error on the jury in light of the other
evidence; the error is not harmless if there is a reasonable likelihood that it
materially affected the jury=s
deliberations.  Neal v. State, 256
S.W.3d 264, 284 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037
(2009).  Stated another way, we must
determine whether there is a reasonable probability that the illegally obtained
and wrongly admitted evidence Amoved
the jury from a state of non‑persuasion to one of persuasion on a
particular issue.@  Langham v. State, 305 S.W.3d 568, 582
(Tex. Crim. App. 2010); see Scott v. State, 227 S.W.3d 670, 690 (Tex.
Crim. App. 2007) (explaining that the Aquestion
is the likelihood that the constitutional error was actually a contributing
factor in the jury=s deliberations in arriving
at th[e] verdict@).

Soliman=s
testimony that identified appellant as the robber is cumulative of other
evidence, including his own father=s
testimony, that identified him as such. 
During the trial, appellant=s
father testified that when the police came to his house to look for appellant,
they showed him a photograph.  The
photograph was likely the same as a photograph that Soliman identified at trial
as being captured from the video surveillance of the robbery.[9]  Appellant=s
father told the police that he recognized appellant in the photograph.[10]








Also,
while being questioned by Detective Wright after his arrest, appellant asked
Detective Wright if he could Awork
out some kind of deal.@[11]  Later during the interrogation, Detective
Wright pointed to a picture from the robbery and asked appellant, AWhat
caused this, man?@  Appellant responded, AToo
much stress.  Way too much stress, man.@  Next, in response to Detective Wright=s
telling appellant, AThis is a mistake,@
appellant said, AI know that, sir, . . . I
was too stressed out and got fed up . . . and needed money.@  Finally, toward the end of the interrogation,
when Detective Wright asked appellant what he was thinking about on the night
of the robbery, appellant admitted to being Anervous@ and
Ashaking@ and
stated that he had Anever really robbed somebody
at gunpoint like that@ and that he Adidn=t
even want to go do it, man.@

Along
with appellant=s
father=s
testimony and appellant=s inculpatory statements
during his interrogation, the following evidence also links appellant to the
robbery: 

$       
appellant=s black and white athletic
shoes that he put on when he was arrested are Avery similar@ to shoes that
Detective Wright saw in the video of the robbery;

 

$       
appellant=s earrings that he
was wearing when he was arrested look like the earrings that the robber wore;

 

$       
the
black Ado‑rag@ that appellant was
wearing when he was arrested looks like the Ado‑rag@ that the robber
wore;

 

$       
Gibbs=s dark car that the
police discovered while arresting appellant looks like the car from video taken
from the restaurant located next to Quick Food Grocery;

 

$       
a
loaded, silver/chrome gun that was found upon execution of the search warrant
at the Grand Prairie apartment looks like the gun from the robbery;

 








$       
a
pair of long male=s shorts found in the
Grand Prairie apartment that have a distinctive design on them and a hanging
symbol from a belt loop appear to match corresponding features of shorts the
robber wore; and

 

$       
the
police found white gloves in a bedroom of the Grand Prairie apartment that
appear to match the white gloves that the robber wore.[12]

 

Based
on all of this evidence that links appellant to the offense, we cannot conclude
that there is a reasonable probability that Soliman=s
identification of appellant as the robber Amoved
the jury from a state of non‑persuasion to one of persuasion@
regarding whether he was the robber.  See Langham,
305 S.W.3d at 582.  Instead, we hold that
Soliman=s
identification of appellant did not likely materially affect the jury=s
deliberation.  See Neal, 256
S.W.3d at 284.

Thus,
after carefully reviewing the record, we hold that even if the trial court
erred by overruling appellant=s
motion to suppress Soliman=s
in-court identification of him, then beyond a reasonable doubt, such error did
not contribute to his conviction or punishment. 
See Tex. R. App. P. 44.2(a). We overrule appellant=s
first issue.








                                                     Conclusion

Having
overruled both of appellant=s
issues, we affirm the trial court=s
judgments.[13]

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL:
LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 1, 2010











[1]See Tex. R. App. P.
47.4.





[2]See Tex. Penal Code Ann.
' 22.02(a)(2) (Vernon
Supp. 2009), ' 29.03(a)(2)
(Vernon 2003).  Aggravated robbery is a
first-degree felony; aggravated assault, as charged in this case, is a
second-degree felony.  See id.
'' 22.02(b), 29.03(b).





[3]Detective Wright
testified in a pretrial hearing that appellant became a suspect based on
information that another police department provided.





[4]See Tex. Penal Code Ann.
' 46.04(a)(1) (Vernon
Supp. 2009).





[5]Appellant pled true
to the repeat offender notice of his indictment.





[6]We will resolve
appellant=s second issue first
because the admissibility of the evidence that the police obtained after
appellant=s arrest affects our
disposition of appellant=s first issue.





[7]Appellant does not
expressly challenge whether the police had a reasonable belief that appellant
was in the Grand Prairie apartment when the police executed the warrant.  We note that even if the trial court had
found Gibbs=s testimony credible
while finding appellant=s father=s testimony not
credible, the officers did not have the benefit of Gibbs=s opinion as to
whether appellant resided with her at the time that they chose to enter the
apartment. Thus, the facts that she testified to cannot defeat their reasonable
belief that appellant lived there.





[8]It is the Aresponsibility of the
appellate court to assess harm.@  Johnson v. State, 43 S.W.3d 1, 5 (Tex.
Crim. App. 2001).





[9]Appellant=s father said that
the photograph that the State=s attorney showed to
him during the trial, taken from the video surveillance of the robbery, was
similar to the photograph that he saw on the date of appellant=s arrest because the
picture showed appellant walking toward a convenience store=s counter, and the
convenience store looked the same in both pictures.





[10]While trying to
persuade the trial court to exclude appellant=s father=s testimony that
identified appellant in the photograph, appellant=s trial counsel
stated that admission of the testimony took Aaway all defensive theory@ and Apractically
amount[ed] to an instruction from the State to find [appellant] guilty.@





[11]The video of
appellant=s interrogation shows
him slouched with his hands over his face on many occasions as Detective Wright
attempted to gain appellant=s confession.





[12]We note that
appellant=s identification as
the robber did not seem to be the biggest issue at trial; appellant=s counsel spent
almost his entire closing argument talking about alleged violations of
appellant=s constitutional
rights.





[13]Although appellant
filed notices of appeal in each of his three aggravated assault cases, neither
of his issues directly contest the trial court=s revoking his
community supervision and finding him guilty in those cases.  To the extent that appellant=s appeals of his
aggravated assault convictions are dependent on his appeal of his aggravated
robbery conviction, we must affirm the aggravated assault convictions for the
reasons stated above.