Gregory Wells **RENO**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–93–208–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 23, 1994.

J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty.; Betty Marshall and Charles M. Mallin, Asst. Dist. Chiefs Appellate Section; David M. Curl, Asst. Dist. Atty., Fort Worth, for appellee.

Before HILL, C.J., and LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant Gregory Wells Reno was convicted by a jury of the offense of murder. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 1994). The jury assessed punishment at seventy-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal Reno raises three points of error contending that: (1) he was denied effective assistance of counsel; (2) the State committed reversible error during its closing argument; and (3) the jury charge was fundamentally defective by failing to include the definition of "reasonable doubt" in the application paragraph. We affirm.

On December 12, 1990, Fort Worth Police Officer Jeff Gatewood went to the Warren Terrace Apartments to serve an arrest warrant on Reno for parole violations. Looking through a window into Reno's apartment, Officer Gatewood saw that the television set was on and several bottles of beer were on the table in front of the television. After receiving no answer at the door, Officer Gatewood had the assistant apartment man-

ager open the door to the apartment with a pass-key. Inside the apartment, Officer Gatewood noticed a closed door with a towel stuffed under it. Upon opening this door, which led to the bathroom, the officer found another door, also sealed with a towel. Officer Gatewood opened this door and found Lynette Jessica ("Katherine") Buchans, Reno's girlfriend, lying dead on the bed. Homicide and crime scene officers were called. Fort Worth Police Detective W.S. Byington arrived at the scene shortly thereafter, viewed the body, and returned to his office to get a search warrant. After securing a warrant, the apartment was searched, and a knife possibly used as the murder weapon was found. The medical examiner found three stab wounds on the back of the body. The fatal wound was two and one-half inches deep and penetrated the victim's lung. The victim had been dead at least three days when she was found. Tommye Bahl, the apartment complex manager, testified that she rented the apartment to Reno and the victim on November 20, 1990. On the day before the discovery of the body, Reno told Bahl that the victim had gone to "visit some friends and did not come back." Reno was seen leaving the apartment shortly before the body was found. Reno fled the State after the body was found, and was arrested in Arizona in July 1991. Reno testified at trial that the victim was killed accidently during a struggle over a knife. Reno was charged both with murder and voluntary manslaughter.

■ In his first point of error, Reno contends that he was denied effective assistance of counsel because his trial counsel failed to contest the initial search of his apartment and did not attempt to suppress evidence acquired as a result of the search. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, a defendant must show that counsel's performance was deficient; second, a defendant must show that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Thus the initial question is whether there was any basis for Reno's counsel to object. If the

evidence was properly admitted, Reno's ineffective assistance point fails.

■ An arrest warrant authorizes entry into a defendant's residence in an effort to effect an arrest when there is reason to believe that the defendant is within. *Steagald v. United States*, 451 U.S. 204, 221, 101 S.Ct. 1642, 1652, 68 L.Ed.2d 38, 51 (1981); *Payton v. New York*, 445 U.S. 573, 602–03, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639, 660–61 (1980); *Jones v. State*, 568 S.W.2d 847, 857 (Tex.Crim.App.), *cert. denied*, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978). The plain view doctrine is an exception to the warrant requirement which permits an officer to seize what he sees in plain sight or open view if he is lawfully on the premises. *DeLao v. State*, 550 S.W.2d 289, 291 (Tex. Crim.App.1977). Here, the police officer who initially searched Reno's apartment had a parole violation warrant. The officer first looked through a window into the apartment, and saw that a television set was on and that there were several bottles of beer on a table in front of the television. This gave the officer the belief that Reno might be inside. The officer then knocked on the door, and receiving no response, had the assistant apartment manager open the door with his pass-key. As the officer and the apartment manager entered the apartment, they both announced their identities, and again received no reply. The officer then searched the apartment for Reno, and found instead the body of the victim lying in plain view in the bedroom. We hold that the officer had reason to believe that Reno was inside the apartment, and that the search incident to the attempted arrest of Reno was proper under the Fourth Amendment to the United States Constitution. The body of the victim was in plain view in the bedroom of the apartment, and thus was properly seized under the plain view doctrine.

■ Reno also argues that article I, section 9 of the Texas Constitution provides additional protection from unreasonable searches. Most of the Texas cases addressing search and seizure law have reached their holdings based on federal constitutional grounds. Even where Texas courts have

addressed Texas constitutional guarantees related to search and seizure, those courts have found the Texas and federal provisions coextensive. *See Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991). However, the court of criminal appeals has held that article I, section 9 of the Texas Constitution is not necessarily coterminous with the Fourth Amendment of the federal constitution. *Id.* at 690. In his brief Reno has not cited any Texas caselaw suggesting that the search of Reno's apartment in an attempt to arrest him was unconstitutional under the Texas constitution. Reno does cite article 15.25 of the Texas Code of Criminal Procedure, which provides that:

> In case of felony, the officer may break down the door of any house for the purpose of making arrest, if he be refused admittance after giving notice of his authority and purpose.

TEX.CODE CRIM.PROC.ANN. art. 15.25 (Vernon 1977). Reno's interpretation of this statute is that a police officer is authorized to enter a defendant's residence without his consent to effect an arrest only if the defendant first refuses the officer entrance. We decline to hold that defense counsel should have attached such a broad meaning to this statute. First, the door here was not broken down. It was opened with a pass-key by an apartment manager. The statute is entitled "May Break Door," not "Entry Without Consent." Thus, the statute does not strictly apply to the facts of this case. Second, the statute is silent about whether no reply is tantamount to a refusal of admittance. If the officer has reason to believe that the defendant is within his residence, but refuses to answer the door by remaining silent, can the officer break down the door? Third, the court of criminal appeals has held that a violation of the notice of authority and purpose provision of section 15.25 is not a basis to suppress evidence. *See Jones,* 568 S.W.2d at 857–58. Fourth, the statute is not necessarily in conflict with the statement of federal law as set out in *Payton,* but instead defines when forcible entry may be made to effect an arrest. Finally, there is a fact issue concerning the right of the apartment manager to enter the apartment. We hold that it was reasonable for defense counsel to decide the officer dis-

covered the victim's body while conducting a proper search of Reno's apartment in order to execute the arrest warrant. Thus, defense counsel was not ineffective by failing to attempt the suppression of evidence found in the apartment. Point of error one is overruled.

Reno argues in his second point of error that the State committed reversible error during its closing argument by encouraging the jury to consider the existence of parole laws in assessing punishment. Defense counsel did not object to the argument. The pertinent portion of the State's argument was as follows:

> What do we know about—You saw us put this in evidence yesterday, this pen pack, his record from the Texas Department of Corrections. And I am going to go through this fairly quickly with you all. If you have never read one, they are difficult to understand. This pen packet will show you that this Defendant, in 1983, was placed on probation for robbery by threats. In 1985, he picked up a new felony offense of an auto theft, seven hundred fifty to twenty thousand dollars. He was on probation in '83 for a felony offense. In 1985, he gets a new felony offense. In 1987, he gets sentenced on both eight years in the Texas Department of Corrections. He gets paroled in 1988 from his eight year sentence. He was on parole when this offense was committed. You are welcome to go back and take a look at this, but that's a summary of what it contains.

> How well did he act on parole? He committed a murder. And you heard he leaves the State. This is not the type of person you want in your community. He is not the type of person you want on parole. He can't make parole. He can't make probation. He's proved both of those. He's been given both chances. The range is fifteen to ninety-nine or life. We ask for life.

 The proper areas for jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Todd v.*

*State,* 598 S.W.2d 286, 296–97 (Tex.Crim.App. [Panel Op.] 1980). Failure to object to impermissible jury argument waives any error on appeal. TEX.R.APP.P. 52(a); *Romo v. State,* 631 S.W.2d 504, 505 (Tex.Crim.App. [Panel Op.] 1982). An exception to the waiver rule is where the State's argument is so egregiously prejudicial that no instruction to disregard could possibly cure the harm. *Losada v. State,* 721 S.W.2d 305, 313 (Tex.Crim. App.1986).

 We hold that the argument in question was not so manifestly improper as to deprive Reno of a fair and impartial trial. For the most part, the comments complained of are reasonable deductions from the evidence contained in Reno's pen packet. The references to parole which were made by the State did not directly explain to the jury how parole laws operate, but merely stated that Reno was on parole when the instant offense occurred. *Cf. Moody v. State,* 827 S.W.2d 875, 894–95 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992), with *Clark v. State,* 643 S.W.2d 723, 725 (Tex.Crim.App. [Panel Op.]

1982). Furthermore, the jury was instructed on the possible effect of parole law on the actual time served in prison, as required by the Texas Code of Criminal Procedure. TEX. CODE CRIM.PROC.ANN. art. 37.07 § 4(b) (Vernon Supp.1994). Point of error two is overruled.

In his third point of error, Reno contends that the jury charge was fundamentally defective in failing to include the required definition of "reasonable doubt" in the application paragraph. This contention has previously been rejected by this court. *See e.g., Hammons v. State,* 856 S.W.2d 797, 803–04 (Tex.App.—Fort Worth 1993, pet. ref'd). Point of error three is overruled.

The judgment of the trial court is affirmed.