

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00047-CR
## NO. 02-14-00048-CR
## NO. 02-14-00049-CR
## NO. 02-14-00050-CR
## NO. 02-14-00051-CR

GILBERT JUNIOR COLLINS A/K/A                                    APPELLANT
GILBERT JOUINOR COLLINS

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NOS. 1324826D, 1324831D, 1324834D, 1324837D, 1324842D

----------

## OPINION

----------

A jury convicted Appellant Gilbert Junior Collins, also known as Gilbert Jouinor Collins, of five instances of aggravated robbery with a deadly weapon, charged in five separate indictments, and assessed his punishment at life imprisonment in each case. The trial court sentenced him accordingly. Appellant

brings four issues on appeal, challenging the trial court's ruling on his motion to suppress and complaining of charge error. Because the trial court committed no reversible error, we affirm the trial court's judgments.

**Brief Summary of Facts**

Fort Worth police suspected Appellant and Lisa Rasberry of aggravated robbery with a handgun of people at a Fort Worth game room and of another robbery two days later involving their attempt to steal a car in which they were riding. Monica Soto, another passenger, was shot and killed, and two other passengers were injured.

Police obtained warrants for the arrests of Lisa and Appellant for the game room robbery and executed the warrants at the home of Lisa's mother, Betty. The home was located at 3051 Hutchison in Fort Worth, Texas. Betty told the police that Appellant and Lisa were at the house, and she let the police in upon their arrival. After they entered the home, the police discovered that Lisa and Appellant were in a bedroom with the door closed and locked from the inside. Officer Michael Johnson kicked open the door to execute the arrest warrants.

When the officers entered the bedroom, they saw on the floor near the mattress a gun matching the description of the one used in the robbery. After Lisa and Appellant were taken into custody and removed from the room, Detective Edward Brian Raynsford arrived at the home. He read Betty a consent-to-search form and asked for permission to search the room. After Betty

consented to the search, Raynsford seized the handgun and articles of clothing that he believed were used in the game room robbery.

Appellant was charged with five counts of aggravated robbery for the events at the game room. He filed a motion to suppress the evidence seized in the warrantless search. The State stipulated that "this [was] a warrantless search." Subsequently, the State clarified its position by agreeing that there was no search warrant but pointing out that the officers seized the evidence in question after they had entered under an arrest warrant and had seen the evidence in plain view. After a hearing, the trial court denied the motion to suppress.

A senior forensic scientist with the Fort Worth Police Department Crime Lab testified that a casing found at the scene of the game room robbery matched the handgun found in the bedroom. A forensic DNA analyst from the UNT Center for Human Identification testified about her analysis of two swabs taken from the gun. She stated that there was a mix of DNA from more than one person on the gun. From her analysis, Appellant could not be excluded as a contributor to DNA collected in the swabs. His DNA fit the profile found on the grip, and she expected that one out of every 7,479 people would fit that profile. His profile also fit the DNA sample taken from the trigger of the gun, and she testified that the probability of randomly selecting someone with that same profile was 1 in 4.9 million.

Appellant requested a jury instruction under code of criminal procedure article 38.23.[1] His requested instruction would have told the jury to disregard all evidence obtained from the search of the bedroom if a reasonable person would believe that Appellant had a reasonable expectation of privacy in the searched area and did not provide consent to the search, that Betty did not have actual or apparent authority to consent to the search, and that the weapon was not in plain view. He also requested that the trial court define "apparent consent" and "actual consent." The trial court denied the requests.

**Motion to Suppress**

In his first issue, Appellant argues that because the police had no search warrant, and fell within no exception to the warrant requirement, the search of the bedroom and seizure of evidence violated the Fourth Amendment. He argues that the police lacked the probable cause coupled with exigent circumstances required to support the search of the bedroom in which they found the handgun and clothing used in the robbery. In his second issue, he argues that Betty lacked the authority and apparent authority to authorize the search of the bedroom. Although both Appellant and the State agree that there were arrest warrants for Lisa and Appellant, the arrest warrants are not part of the record. We therefore cannot say whether the arrest warrants name a location to enter in order to execute the warrants or whether the warrants contain instructions to

_____

[1]*See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).

4

search. Because no one argues that the warrants were arrest-and-search warrants, and because there is no evidence that the warrants contained instructions to conduct a search, we treat the warrants solely as arrest warrants that authorize no entry into a specific address to locate Appellant or Lisa.

The officers entered the bedroom in Betty's house where Appellant and Lisa were sleeping on a mattress on the floor in order to execute arrest warrants for Lisa and Appellant. The officers saw a black handgun and magazine lying on the floor near Lisa. They also saw hats on the wall and other items of clothing around the bedroom. The officers testified that the gun and clothing were in plain view when they entered the bedroom. State's Exhibit 43 shows the gun lying on the floor near the mattress.

While searches conducted without a warrant are per se unreasonable, seizing contraband in plain view does not run afoul of the Fourth Amendment.[2] "The 'plain view' doctrine permits an officer to seize contraband which he sees in plain sight or open view if he is lawfully where he is."[3] That is, three requirements must be met to justify the seizure of an object in plain view:

> First, law enforcement officials must lawfully be where the object can be "plainly viewed." Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the

---

[2] *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

[3] *DeLao v. State*, 550 S.W.2d 289, 291 (Tex. Crim. App. 1977).

officials. And third, the officials must have the right to access the object.[4]

We conclude that the seizure of the firearm, magazine, and clothing satisfies these requirements.

A well-recognized exception to the search warrant requirement is a search pursuant to consent.[5] Betty not only gave the police permission to enter the house and the bedroom, she called the police to tell them that her daughter and Appellant had returned to the house so the officers could execute the arrest warrants. Although Betty and her parents rented the house, it was Betty's home and she, therefore, had the authority to grant the police permission to enter the house.[6]

But Appellant relied on Betty's testimony that Lisa and Appellant stayed in the searched bedroom about half the time and that they locked the door when they were there to argue that Betty lacked authority to grant permission to search the bedroom.[7] In the motion to suppress, Appellant referred to the home as his residence.

---

[4]*Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citations and internal quotation marks omitted).

[5]*Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

[6]*See United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974).

[7]*See Riordan v. State*, 905 S.W.2d 765, 772 (Tex. App.—Austin 1995, no pet.).

6

To comply with *Payton v. New York*, officers who execute an arrest warrant must have a "reasonable belief that the suspect resides at the place to be entered . . . and have reason to believe that the suspect is present"[8] at the time the warrant is executed.[9]  This rule of law presents something of a Catch-22 for Appellant.  If the trial judge believed Appellant's version of the facts, Appellant was a resident of the home, and the police were lawfully in the home and bedroom under the arrest warrant for him.[10]  An arrest warrant authorizes entry into a defendant's own residence when there is reason to believe that the defendant is within.[11]  And, if Lisa was a resident of the house where the officers executed the arrest warrants for Appellant and Lisa, as her driver's license indicates in State's Exhibit 42, the arrest warrant for Lisa authorized entry into her residence (and therefore the bedroom) to execute her arrest warrant.[12]  Because the police were lawfully inside the bedroom, there was no impediment

---

[8]*Morgan v. State*, 963 S.W.2d 201, 204 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citations and quotation marks omitted).

[9]445 U.S. 573, 601–05, 100 S. Ct. 1371, 1388–89 (1980) (explaining that if there "is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified," the police may "require him to open his doors").

[10]*See id.*

[11]*Id.*; *Reno v. State*, 882 S.W.2d 106, 108 (Tex. App.—Fort Worth 1994, pet. ref'd); *see also Morgan*, 963 S.W.2d at 204.

[12]*See Payton*, 445 U.S. at 601–05, 100 S. Ct. at 1388–89; *Reno*, 882 S.W.2d at 108; *Morgan*, 963 S.W.2d at 204.

to executing Appellant's arrest warrant or seizing the evidence.[13]   If neither Appellant nor Lisa was a resident of that house, Betty's consent validly authorized the officers' entry into the home and bedroom.[14]

That is, whether because of consent or because they were executing arrest warrants where Appellant or Lisa lived, the officers were lawfully in the bedroom to execute the arrest warrants and required no additional search warrant to discover the firearm, magazine, and items of clothing.  The officers were therefore authorized to seize weapons and evidence plainly visible while they were executing the arrest warrants.  We overrule Appellant's first and second issues.

**Jury Charge**

Appellant contends in his third and fourth issues that the trial court reversibly erred by denying his requested article 38.23 jury instruction on plain view and Betty's apparent authority to consent.  The State argues that Appellant is estopped from complaining about the failure to submit instructions under article 38.23(a) because when testimony about the seized evidence was first elicited, he informed the trial court that he was "not consenting to the relitigation . . . of the motion to suppress."  Additionally, the State contends that Appellant was not

---

[13]*See Payton*, 445 U.S. at 601–05, 100 S. Ct. at 1388–89; *Reno*, 882 S.W.2d at 108; *Morgan*, 963 S.W.2d at 204.

[14]*See Matlock*, 415 U.S. at 171, 94 S. Ct. at 993.

entitled to the instructions because there were no disputed issues of material fact regarding the search of the bedroom after Appellant's arrest there.

Article 38.23(a) of the Texas Code of Criminal Procedure provides,

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.[15]

Appellant did not litigate the motion to suppress before the jury. He did, however, challenge the officers' claim that the objects seized were in plain view. The Texas Court of Criminal Appeals instructs us that the article 38.23 instruction is proper only when the motion to suppress is litigated before the jury:

> A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. We have previously explained:

>> The terms of the statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. Where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury.

---

[15]Tex. Code Crim. Proc. Ann. art. 38.23.

9

There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under Article 38.23(a):

(1) The evidence heard by the jury must raise an issue of fact;

(2) The evidence on that fact must be affirmatively contested; and

(3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

There must be a genuine dispute about a material fact. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.[16]

Appellant essentially objected to litigating the motion to suppress before the jury while challenging the justification for seizing the evidence he complains of. He argued that the gun was not in plain view and supported his argument with the fact that the gun is not visible in State's Exhibits 35 and 36. Appellant in this case established all three elements required for the instruction. Thus, given the posture of this case at the point the trial court instructed the jury on guilt, we hold that the trial court erred by refusing Appellant's requested jury instruction on plain view.[17]

---

[16] *Madden v. State*, 242 S.W.3d 504, 509–11 (Tex. Crim. App. 2007) (citations omitted).

[17] *See Oursbourn v. State*, 259 S.W.3d 159, 165 (Tex. Crim. App. 2008).

We review jury charge error under the *Almanza* standard.[18]  Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error.[19]  In other words, a properly preserved error will require reversal as long as the error is not harmless.[20]  This analysis requires a reviewing court to consider (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record.[21]

The police entered the bedroom pursuant to an arrest warrant.  They also had consent to enter both the house and the bedroom.  The factual issue of whether the weapon, clothing, and glasses were in plain view was resolved by photographic evidence.  There was no evidence that State's Exhibit 43 did not

---

[18]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[19]Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Almanza*, 686 S.W.2d at 171; *see also Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

[20]*Almanza*, 686 S.W.2d at 171.

[21]*Reeves*, 420 S.W.3d at 816; *see also Almanza*, 686 S.W.2d at 171 ("[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.").

accurately depict the location of the gun and no challenge to the clothing's being in plain view other than the challenge to the lawfulness of the search.

The police were lawfully in the bedroom when they saw the items depicted in the photographs. The evidence of Appellant's guilt was overwhelming. We therefore hold that the trial court's error in refusing the requested jury instruction was harmless beyond a reasonable doubt, and we overrule Appellant's third issue.

As for Appellant fourth issue, in which he argues he was entitled to a 38.23 instruction on Betty's apparent authority to consent, the Texas Court of Criminal Appeals has explained that a trial judge has a *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged.[22] Article 38.23(a) requires a jury instruction only if there is a genuine dispute about a material fact, and that fact must be essential to deciding the lawfulness of the challenged conduct in obtaining the evidence.[23]

The circumstances of this case are unique. If either Appellant or Lisa lived at the Hutchison address, as Appellant argues, and if, as a result, Betty had neither actual nor apparent authority to consent to the police entry into the bedroom, the police were nonetheless authorized to enter the bedroom to execute the arrest warrants, as we explained in our disposition of Appellant's first

---

[22] *Oursbourn*, 259 S.W.3d at 179.

[23] *See Madden*, 242 S.W.3d at 510.

two issues. Betty's authority to consent to the search under those circumstances would be irrelevant. If neither Lisa nor Appellant lived at the Hutchison address, contrary to Appellant's position, there is no question of Betty's authority to consent. Appellant, therefore, was not entitled to a 38.23 instruction regarding Betty's authority or apparent authority. We overrule his fourth issue.

**Conclusion**

Having overruled Appellant's four issues, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

LIVINGSTON, C.J., filed a concurring opinion in which GABRIEL, J., joins.

PUBLISH

DELIVERED: April 23, 2015

13