**Affirmed and Memorandum Opinion filed September 25, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00446-CR

## TROY ANTHONY ROBERTSON, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1460174**

## M E M O R A N D U M   O P I N I O N

A jury found appellant guilty of aggravated robbery and assessed punishment at forty years' confinement. Appellant contends that the evidence is insufficient to support his conviction and that the trial court erred by overruling his motion to suppress. We affirm.

# I.  BACKGROUND

Two masked men entered a She's Happy Hair store in the Greenspoint area of Harris County. The men wielded black and silver pistols. The store's manager and another employee (the complainant) locked themselves in the back room during the robbery. One of the robbers exclaimed, "If you don't open the door, I am going to start shooting." The manager testified that the complainant was panicking and seemed very scared.

Surveillance video of the robbery was admitted as an exhibit at trial, and a Harris County Sherriff's Office deputy estimated that both suspects were under five feet, five inches tall; one suspect was skinnier than the other. The manager testified that the robbers were African American, and one of them wore Nike Air Jordan Infrared sneakers.

The robbers stole two pillowcases full of hair extensions, among other things. A witness saw the men get into a Chevrolet Trailblazer, which was being driven by a young woman. The Trailblazer got on Interstate 45, and the witness pursued in his pickup truck. The witness called 911 to report the activities and the license plate number of the Trailblazer.

The witness followed the Trailblazer onto a side street where the two men got out of the Trailblazer and fired at least fifteen rounds at the witness. The witness floored it and avoided being shot, though his truck was shot multiple times. Police officers ultimately recovered shell casings from the scene, both 9mm and .40 caliber. The witness, undeterred, circled back and continued to pursue the Trailblazer until one man jumped out and ran into an apartment complex. The witness stopped and waited for police to arrive.

Deputies with the Harris County Sheriff's Office learned that the Trailblazer was registered to appellant's girlfriend, Kelsey Gardner. She had an outstanding warrant for her arrest. A deputy also learned that appellant "fit the height, weight and the physical description as one of the suspects in the [surveillance] video."

On the day after the robbery, deputies went to Gardner's apartment. Gardner answered the door, and a deputy observed what appeared to be marijuana on the floor. The deputy followed Gardner into the apartment when she went to get her identification card. The deputy saw more marijuana on a kitchen counter and some clothes on the living room floor that looked similar to what the robbers wore. Appellant was in the bedroom but came into the living room when deputies called out to him. A deputy then walked through the one-bedroom apartment to check for additional people.

A deputy asked Gardner about the Trailblazer, and Gardner said it had been stolen the day before although she did not report the theft. The deputies arrested Gardner and appellant, and the deputies obtained a search warrant for the apartment. The affidavit in support of the warrant contained information about marijuana and clothing that the deputy had observed inside the apartment.

During the search, deputies seized two semiautomatic pistols that appeared identical to the ones used during the robbery. One was a .40 caliber and the other was a 9mm. The guns were found in the bedroom closet. The deputies seized black hoodies and pants similar to the clothes worn by the robbers, and they seized a pair of size seven Nike Air Jordan sneakers with a neon pink design similar to the sneakers worn by a robber. The deputies seized a box of ammunition—.40 caliber with seven bullets missing. The deputies seized multiple cell phones.

Deputies searched at least one of the cell phones pursuant to a warrant. The phone's data identified appellant as the owner. The data included pictures of

appellant with a black and silver pistol. The data included a screenshot of a social media post from She's Happy Hair, dated the day before the robbery, showing a large quantity of hair extensions. And the data showed that on the evening of the robbery, the phone was used to search the Internet for "she's happy hair robbery" and "witness fired upon after tailing suspected hair thieves."

While appellant was in jail, he and Gardner spoke over the phone. The calls were recorded and admitted at trial. During one of the calls, appellant said that he put the guns in the closet. During another call, Gardner mentioned walking over to the car to see if it was still there because appellant was concerned about it getting towed. Gardner said she had the title and was going to sell it.

A few months later, deputies found the Trailblazer within walking distance of Gardner's apartment, which was also within walking distance of where the robbers shot at the witness. Deputies found a mask inside the Trailblazer, along with one of appellant's fingerprints on a seatbelt.

The State's firearms expert testified that she compared nine 9mm cartridge casings and seven .40 caliber cartridge casings recovered from the shooting scene to cartridge casings fired from the two pistols recovered in Gardner's apartment. She testified that the recovered cartridge casings were fired by the two pistols.

At trial, the court denied appellant's motion to suppress evidence found during the warrant search of Gardner's apartment. The jury found appellant guilty and assessed punishment at forty years' confinement.

## II.    SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence is insufficient to support his conviction as a principal or party to the robbery. In particular, appellant challenges his identity as one of the robbers, that the complainant was threatened

or placed in fear of imminent bodily injury or death, and that the complainant was the owner of the stolen property.

## A.    Standard of Review and General Principles

In a sufficiency review, we must consider all of the evidence in the light most favorable to the jury's verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). We defer to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 766. The jury is the sole judge of the credibility and weight to be attached to witness testimony, and we must defer to the jury's resolution of conflicting inferences that are supported by the record. *See id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge includes the statutory elements of the offense as modified by the charging instrument. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012).

The essential elements of an aggravated robbery, as modified by the indictment in this case, are that (1) the defendant, (2) in the course of committing theft, (3) with intent to obtain or maintain control of property, (4) knowingly or intentionally, (5) threatened or placed another in fear of imminent bodily injury or death, and (6) used or exhibited a deadly weapon. *See* Tex. Penal Code

5

§§ 29.02(a)(2), 29.03(a)(2); *see also Robinson v. State*, 596 S.W.2d 130, 132 (Tex. Crim. App. 1980).

## B. Identity

Appellant contends the evidence is insufficient to prove his identity as one of the principal actors who entered the She's Happy Hair. "Unquestionably, the State must prove beyond a reasonable doubt that the accused is the person who committed the crime charged." *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Identity may be proven by direct or circumstantial evidence and through inferences. *Id.*; *see also Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). When identity is at issue, we must consider the combined and cumulative force of all the evidence. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012). When, as here, the jury returns a general verdict of guilt after being charged on both primary-actor and party-liability theories, we will affirm if the evidence is sufficient to support a guilty verdict under either theory. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992).

The evidence establishing appellant's guilt as one of the principals who entered the She's Happy Hair is circumstantial, yet significant. Appellant was linked to the firearms used during the robbery because he admitted to placing the two pistols in the location where they were later discovered, and his cell phone included a picture of him with a similar firearm. *See Palomo v. State*, 352 S.W.3d 87, 90–91 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (evidence of guilt included access to the murder weapon). Furthermore, his cell phone included a screenshot of a She's Happy Hair social media post, dated the day before the robbery, and the phone included records of searches regarding the robbery on the day it occurred.

Appellant fit the general physical description of one of the robbers in the surveillance video, and clothing similar to the robbers' was found in the apartment he shared with Gardner. The pair of size seven Nike Air Jordan sneakers with distinctive pink coloring, which deputies found in the apartment, appeared similar to the sneakers worn by one of the robbers.

Considering the combined and cumulative force of all of the evidence in the light most favorable to the jury's verdict, a rational jury could find that appellant was one of the principals who entered the She's Happy Hair store. There is sufficient evidence of appellant's identity as a principal actor.

## C. Threatened or Placed in Fear

Next, appellant contends that there is insufficient evidence to prove that the complainant was threatened or placed in fear of imminent bodily injury or death. The complainant did not testify at trial, and there is no evidence that the complainant ever directly interacted with the robbers because the complainant remained locked in the store's back room.

A conviction for aggravated robbery may be upheld even if there is "no evidence in the record showing that the appellant was aware of" the complainant. *Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011). In *Howard*, for example, the defendant robbed a convenience store, and the complainant was in the back office during the robbery. *Id.* at 137–38. The Court of Criminal Appeals upheld the conviction based on the testimony of the complainant that she was frightened and surveillance video showing the defendant aggressively brandished a rifle. *See id.* at 140.

Here, the manager testified that the complainant was panicking and very scared during the robbery. The manager testified that one of the robbers threatened

to shoot his pistol, and the surveillance video shows the robber wielding and pointing the pistol. From this evidence, a rational jury could find that appellant threatened the complainant or placed him in fear of imminent bodily injury or death. *See id.* There is sufficient evidence of this element of aggravated robbery.

**D.    Owner of Property**

Finally, appellant contends that there is insufficient evidence to prove that the complainant was an owner of the property identified in the indictment. Appellant relies solely on the theft case of *Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011).

Under the Penal Code, a person is an "owner" if the person has a greater right to possession of the property than the actor. Tex. Penal Code § 1.07(a)(35)(A). In *Byrd*, the State alleged a theft from "Mike Morales." 336 S.W.3d at 254. The State proved only that property was taken from a Wal-Mart store, however, and "no one at trial ever heard of Mike Morales or that he had anything to do with Wal-Mart." *Id.* Accordingly, the State failed to prove that the defendant stole any property from the named complainant. *Id.* at 257. The Court of Criminal Appeals reversed the conviction and entered a judgment of acquittal. *Id.* at 258.

Here, however, the store's manager testified that the complainant was an employee of She's Happy Hair and was working in the store at the time of the robbery. Thus, there is sufficient evidence that the complainant was an "owner" of the stolen property because he had a greater right to possession of the property than appellant. *See Sherlock v. State*, 632 S.W.2d 604, 608 (Tex. Crim. App. [Panel Op.] 1982) (sufficient evidence of aggravated robbery when the named complainant was an employee of the robbed store because the named complainant had a greater right to possession of the stolen property "by reason of his

employment"); *House v. State*, 105 S.W.3d 182, 184 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (same).

Appellant's first issue is overruled.

### III.   MOTION TO SUPPRESS

In his second issue, appellant contends that the trial court erred by overruling his motion to suppress evidence seized during the warrant search of Garland's apartment because information in the probable cause affidavit was illegally obtained. Specifically, appellant contends that "the intrusion by law enforcement into the apartment Appellant was occupying was illegal and the information regarding what was seen in the apartment was fruit of the illegality." Appellant complains about the affidavit's reference to drugs and clothing observed by a deputy in plain view.

We must uphold the trial court's denial of a motion to suppress if it is reasonably supported by the record and correct under any applicable theory of law. *Hereford v. State*, 339 S.W.3d 111, 117–18 (Tex. Crim. App. 2011). We view the record in the light most favorable to the trial court's ruling and reverse only if that ruling is outside the zone of reasonable disagreement. *Id.* at 118. We infer factual findings implicit to the trial court's conclusion if the implied findings are supported by the record. *Id.* We analyze the trial court's application of the law de novo. *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015).

Appellant's argument relies on the principle that a search warrant may not be procured lawfully by the use of illegally obtained information. *See id.* at 877. In this case, the deputy who applied for the search warrant testified that at the time of the initial entry into Garland's apartment, there was already an open warrant for Garland's arrest. Accordingly, the intrusion into Garland's apartment was not

illegal. *See Payton v. New York*, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); *see also Morgan v. State*, 963 S.W.2d 201, 204 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (same, and noting that if a suspect is a co-resident of a third party, then "*Payton* allows both arrest of the *subject* of the arrest warrant and use of evidence found against the *third party*").

While lawfully inside Garland's apartment, a deputy observed what appeared to be marijuana and evidence of the robbery in plain view. *See generally State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013) (noting that to seize an object in plain view, officers "must lawfully be where the object can be 'plainly viewed'" (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009))). A search warrant affidavit lawfully may include references to items observed in plain view. *See Christopher v. State*, 489 S.W.2d 575, 577–78 (Tex. Crim. App. 1973) (affidavit showed probable cause in part based on officer's observation of stolen items in plain view); *Duhig v. State*, 171 S.W.3d 631, 635–37, 639 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (valid search warrant based on information contained in the affidavit that officers observed in plain view); *cf. Jones v. State*, 568 S.W.2d 847, 857 (Tex. Crim. App. 1978) (upholding admission of evidence seized during the execution of an arrest warrant because the arrest warrant authorized entry into the appellant's apartment, the officers' intrusions into the bathroom and bedroom were justified, and the items seized were in plain view in those areas); *Collins v. State*, 462 S.W.3d 617, 622–23 (Tex. App.—Fort Worth 2015, no pet.) (officers were authorized to seize evidence in plain view in the defendant's bedroom while they were executing arrest warrants).

The affidavit in support of the search warrant did not contain any illegally obtained information, and appellant has not made any other arguments for why the affidavit fails to establish probable cause. Accordingly, the trial court did not err by denying the motion to suppress.

Appellant's second issue is overruled.

## IV. CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/      Ken Wise
             Justice


Panel consists of Justices Boyce, Donovan, and Wise.

Do Not Publish — Tex. R. App. P. 47.2(b).