

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00295-CR

---

RANDY PHILIP CHAUDRON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1521449D; Honorable George Gallagher, Presiding

---

November 8, 2019

## MEMORANDUM OPINION

Before QUINN, C.J. and PIRTLE and PARKER, J.J.

Appealing from his conviction for evading arrest with a vehicle,[1] Appellant, Randy Philip Chaudron, challenges his conviction through two issues.[2] First, he argues the

---

[1] TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2019). An offense under this section is a third degree felony. Appellant's range of punishment, however, was enhanced based on his two prior final felony convictions. TEX. PENAL CODE ANN. § 12.42(d) (West 2019). The jury assessed punishment against Appellant at thirty years of imprisonment.

[2] Originally appealed to the Second Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

evidence was insufficient to show he used a deadly weapon in evading arrest and second, he argues the trial court erred in refusing to include in its charge to the jury a requested instruction.  We affirm.

### BACKGROUND

Appellant was charged via indictment with "intentionally flee[ing], using a vehicle, from J. Reynolds knowing J. Reynolds was a peace officer who was attempting to lawfully arrest or detain the defendant."  The indictment also included a deadly weapon finding notice that stated, "And it is further presented in and to said court that during the commission of the above described felony, the said defendant did use a deadly weapon, namely a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury."

At trial, Fort Worth Police Officer Justin Reynolds testified that on the day he stopped Appellant, he was monitoring a school zone.  He told the jury that the "lights are activated between 8:30 and 9:30" and agreed that anyone driving in excess of twenty miles per hour through that zone after 8:30 and before 9:30 in the morning would be committing a traffic violation.  At just before 9:30, Reynolds observed, using radar, Appellant driving twenty-nine miles per hour through the school zone.  Reynolds initiated a traffic stop, stopping his motorcycle behind Appellant.  Reynolds approached Appellant and attempted to obtain his identification.  Appellant provided to him identification belonging to another person and would not give to the officer his own identifying information.  After approximately thirteen minutes of discussion during which the officer attempted to gain this information, Appellant quickly backed up in his vehicle, hit the officer's motorcycle, and knocked it over.  He then revved his engine and sped away.

2

Reynolds was not injured but did have to move quickly to the sidewalk to avoid being in the path of Appellant's vehicle. A recording from Reynold's body camera, admitted into evidence, showed these events. Appellant was later apprehended by another officer.

### ISSUE ONE—SUFFICIENCY OF THE EVIDENCE TO SUPPORT DEADLY-WEAPON FINDING

In his first issue, Appellant contends the evidence was insufficient to support the jury's affirmative finding that he used a deadly weapon, to-wit: his vehicle, in evading arrest. He argues that while he did back over the officer's motorcycle, he did so in a way to avoid the officer and when he sped away, he drove to a street that was occupied only by empty vehicles. Therefore, Appellant asserts, there was no actual danger to anyone and nothing to support his use of his vehicle as a deadly weapon.

In order to establish Appellant committed the offense of evading arrest or detention with a vehicle, the State had to show he intentionally fled from a person he knew was a peace officer attempting lawfully to arrest or detain him, using a vehicle while in flight. TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A). Appellant concedes the evidence was sufficient to prove he evaded arrest or detention and challenges only the finding that he used his vehicle as a deadly weapon in the course of committing that offense.

When reviewing a deadly-weapon finding, appellate courts "review the record to determine whether, after viewing the evidence in the light most favorable to the [verdict], any rational trier of fact could have found beyond a reasonable doubt that the [vehicle] was used or exhibited as a deadly weapon." *Brister v. State,* 449 S.W.3d 490, 493 (Tex. Crim. App. 2014) (citing *Cates v. State,* 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)). The trier of fact is the sole judge of the weight of the evidence and credibility of the

3

witnesses and we may not re-evaluate the weight and credibility determinations made by the fact finder.  *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A motor vehicle is not a deadly weapon *per se*, but it can be found to be one if it is used in a manner that is capable of causing death or serious bodily injury.  *Brister,* 449 S.W.3d at 494.  *See also* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (defining deadly weapon).  Thus, a vehicle can be a deadly weapon "when it does more than simply present a mere potential for endangering others."  *McKinney v. State,* No. 07-12-0206-CR, 2013 Tex. App. 1431, at *2 (Tex. App.—Amarillo Feb. 13, 2013, no pet.) (mem. op., not designated for publication) (citations omitted).  To sustain a finding that the object in question is a deadly weapon, the evidence must illustrate that the object met the definition of a deadly weapon; the deadly weapon was used or exhibited during commission of the offense; and other people were put in actual danger.  *Brister,* 449 S.W.3d at 494 (citing *Drichas v. State,* 175 S.W.3d 795, 798 (Tex. Crim. App. 2005)). To sustain a finding regarding the use of a deadly weapon, intent to use a motor vehicle as a deadly weapon is not required. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  And, "evidence may be sufficient to support a deadly weapon finding in the absence of any evidence that either death or serious bodily injury occurred."  *Cummings v. State,* No. 05-17-00852-CR, 2018 Tex. App. LEXIS 5925, at *7 (Tex. App.—Dallas July 31, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Moore v. State,* 520 S.W.3d 906, 908 (Tex. Crim. App. 2017)).

In conducting our analysis, we first evaluate the manner in which the defendant used the motor vehicle during the commission of the offense.  *Hilburn v. State,* 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra v. State*, 280 S.W.3d

4

250, 255 (Tex. Crim. App. 2009)). We then "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.*

Appellant argues here that the evidence did nothing more than show his driving could have potentially been a danger to others. This, he says, is not sufficient to support the jury's deadly-weapon finding. He notes that when he drove off, Reynolds was standing a few feet outside Appellant's vehicle. According to Appellant, the video shows Appellant, "rather than driving forward and risking coming close to Officer Reynolds, he backed up to create additional space to flee." Further, he argues, the direction he fled was to a street that was unoccupied, save for empty parked vehicles. No one, including Reynolds, was hurt.

We must disagree with Appellant's assessment of the evidence. As the State says in its response to Appellant's issue, we are to review the evidence in the light most favorable to the jury's deadly-weapon finding. In doing so, we see on the video that Appellant suddenly and quickly backs his vehicle into Reynold's motorcycle. We hear a loud crash as Appellant continues to back into the motorcycle, knocking it over and disabling it. Appellant then pulls forward toward where the officer is standing, revs his engine, and takes off. Reynolds runs out of the street and to the sidewalk in order to get out of Appellant's path. On the video, we can hear the tires screeching and see dirt flying in the direction in which Appellant fled. The jury also had before it Reynolds's testimony of what happened. Furthermore, during his testimony, Reynolds agreed that he would consider a vehicle to be capable of causing death or serious bodily injury and that he one "hundred percent" felt like the way Appellant's vehicle was driven at him or the way it was driven off the road could cause someone serious bodily injury or death.

5

The jury was entitled to view Appellant's operation of his motor vehicle as dangerous or reckless and as posing an actual risk to Reynolds.  *Sierra,* 280 S.W.3d at 255; *Cummings,* 2018 Tex. App. LEXIS 5925, at *9-10.  Additionally, the jury could have rationally concluded that the manner in which Appellant used his vehicle could have caused death or serious bodily injury to any other passerby.  The video shows traffic on the street behind Appellant's vehicle and Reynolds's motorcycle.  Any one of those vehicles could have turned onto that street during the time Appellant backed into the motorcycle and then took off down the street.  *See Moore v. State,* No. 06-10-00173-CR, 2011 Tex. App. LEXIS 5975, at *10-11 (Tex. App.—Texarkana Aug. 2, 2011, no pet.) (mem. op., not designated for publication) (finding the evidence sufficient to uphold a finding that a truck was a deadly weapon because the manner in which the defendant operated it posed actual danger to the officers in proximity to the vehicle at the time he rapidly accelerated, causing it to dangerously swing out into the path of the officers, who were forced to move quickly in order to avoid being struck).

Viewing the evidence in the requisite light, we find a rational jury could have determined beyond a reasonable doubt that Appellant used or intended to use his vehicle in a manner capable of causing death or serious bodily injury.  Accordingly, the evidence was sufficient to support the jury's deadly-weapon finding.  We overrule Appellant's first issue.

### ISSUE TWO—ARTICLE 38.23 INSTRUCTION

In his second issue, Appellant argues the trial court erred when it refused to include in its charge to the jury his requested instruction pursuant to article 38.23 of the Code of Criminal Procedure.  As support for his argument, Appellant says there was a factual

dispute identified at trial over when Reynolds saw Appellant speed through the school zone. If it was before 9:30 a.m., as the officer testified, Reynolds would have been attempting to lawfully detain Appellant when he evaded arrest or detention. If, however, it was after 9:30 a.m., as the "call out" report seemed to indicate with a time of 9:40, Appellant was not speeding when the school zone was active and as such, Reynolds would not have been acting lawfully when he attempted to arrest or detain Appellant and Appellant would not have been guilty of evading arrest.

We review jury charge error under the *Almanza* standard. *Collins v. State,* 462 S.W.3d 617, 624 (Tex. App.—Fort Worth 2015, no pet.) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). When a timely objection is made, any error in the charge requires reversal if the error was "'calculated to injure the rights of [the] defendant,' which means no more than that there must be some harm to the accused from the error." *Id.* (citations omitted). This analysis requires a reviewing court to consider (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record. *Id.* (citations omitted).

A defendant's right to the submission of jury instructions under article 38.23(a) is "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007) (citing *Pierce v. State,* 32 S.W.3d 247, 251 (Tex. Crim. App. 2000)). The Court of Criminal Appeals has explained the statute by saying:

> The terms of the statute are mandatory, and when an issue of fact is raised,
> a defendant has a statutory right to have the jury charged accordingly. The

only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. Where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury.

*Id.* (citing *Murphy v. State,* 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)).

There are three requirements a defendant is required to satisfy before he is entitled to the submission of a jury instruction under article 38.23(a). *Madden,* 242 S.W.3d at 510 (citation omitted). First, the evidence heard by the jury must raise an issue of fact. *Id.* (citations omitted). Second, the evidence on that fact must be affirmatively contested. *Id.* (citations omitted). Third, that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* (citations omitted).

With respect to the first factor, there must be a genuine dispute about a material fact. *Id.* (citing *Garza v. State,* 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id.* (citations omitted). If other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.* (citations omitted). The disputed fact must be a crucial one in deciding the lawfulness of the challenged conduct. *Id.* at 511 (citation omitted).

Prior to submission of the charge to the jury, the following exchange took place:

Counsel:    Judge, the only thing we'd request is a 38.23 charge based on the traffic stop. I believe we discussed this outside the presence of the jury beforehand. But that's the only thing we request in addition to the charge. Otherwise, we have no objections.

Court: For the jury to determine whether or not it was -- that they would have to disregard anything that would be illegally obtained?

Counsel: That's correct, Judge, based on the traffic stop. I believe the officer testified he was not aware what time he made the traffic stop, and I believe that raises a question as to whether or not it was a valid traffic stop or not.

Court: Any response?

Prosecutor: I would respond that the officer testified he believed it was between 9:00 and 9:20. It was during the time of the school zone. I don't think there's anything in evidence to conflict with that fact. So we would argue that there is no evidence to --

Court: Okay. I'll deny that request.

Counsel: Thank you, Judge.

The State argues Appellant's "request did not specify what facts he believed were in dispute." However, the State only quoted the first paragraph of counsel's request. Defense counsel did identify that it was the time of the traffic stop that was in dispute, and the time affected the validity of the traffic stop. The evidence before the trial court included Reynolds's testimony and the recording from his body camera. Reynolds testified he saw Appellant speeding in the school zone during a time the school zone was active. After stopping Appellant for that violation, Reynolds spoke with Appellant for some thirteen minutes before Appellant backed over Reynolds's motorcycle and sped away. It was at that time Reynolds called dispatch to report the incident. The evidence shows that call was made at 9:41:59, according to the defense exhibit introduced at the suppression hearing. From that evidence, the court could have determined that Reynolds saw Appellant driving through the school zone before 9:30 a.m., supporting a finding that the stop was valid. The fact that the school zone is in effect from 8:30 a.m. to 9:30 a.m., that Reynolds and Appellant spoke for approximately thirteen minutes before Appellant

9

backed into the motorcycle and fled, and that the "call out" report was around 9:40 are all undisputed facts. These undisputed facts are sufficient to support Reynolds's traffic stop of Appellant. *Madden,* 242 S.W.3d at 509-11. Because Appellant did not satisfy his burden for entitlement to his requested article 38.23 instruction, the trial court did not err in refusing to submit that instruction. *Id. See also Manifold v. State,* No. 06-17-00101-CR, 2017 Tex. App. LEXIS 10485, at *8-9 (Tex. App.—Texarkana Nov. 9, 2017, pet. ref'd) (mem. op., not designated for publication) (no error in denying article 38.23 instruction when it was undisputed that the officer observed the defendant fail to remain entirely within a single lane of traffic and video evidence supported that testimony). Accordingly, we overrule Appellant's second issue.

### CONCLUSION

Having resolved each of Appellant's issues against him, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.